No. 15-16501

---

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN
PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK
RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; JEFFREY
MULLEN; IMBERT & SMITHERS, INC.; and ALEX ROLSKY,
*Plaintiffs-Appellants,*

v.

KAMALA D. HARRIS, in her official capacity as Attorney General of
California; and STEPHEN J. LINDLEY, in his official capacity as Chief of
the California Department of Justice Bureau of Firearms,
*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
The Honorable Troy L. Nunley
Case 2:14-cv-02626-TLN-DAD

---

APPELLANTS' EXCERPTS OF RECORD

---

Bradley A. Benbrook
Stephen M. Duvernay
Benbrook Law Group, PC
400 Capitol Mall, Suite 1610
Sacramento, CA 95814
(916) 447-4900

Eugene Volokh
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

Pursuant to Ninth Circuit Rule 30-1, Plaintiffs-Appellants Tracy Rifle and Pistol LLC, Michael Baryla, Ten Percent Firearms, Wesley Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms, Inc., Jeffrey Mullen, Imbert & Smithers, Inc., and Alex Rolsky, by and through their counsel of record, hereby submit their Excerpts of Record.

Dated: August 24, 2015

s/ Eugene Volokh
Attorney for Plaintiff-Appellants
Tracy Rifle & Pistol LLC et al.

# INDEX

## VOLUME I

| File Date | Document | Page Nos. |
|---|---|---|
| 7/27/2015 | Notice of appeal | ER 1-4 |
| 7/16/2015 | Order denying Plaintiffs' motion for preliminary injunction | ER 5-22 |
| 2/27/2015 | First Amended Complaint for Declaratory, Injunctive, or Other Relief | ER 23-24 |
| 2/23/2015 | Declaration of Nelson R. Richards in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, and Exhibit 6 thereto. | ER 25-28 |
| 2/23/2015 | Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction | ER 29-33 |
| 11/17/2014 | Declaration of Jeffrey Mullen ISO Mot. for Preliminary Injunction | ER 34-35 |
| 11/17/2014 | Declaration of Robert Adams ISO Mot. for Preliminary Injunction | ER 36-37 |
| 11/17/2014 | Declaration of Dean Rowden ISO Mot. for Preliminary Injunction | ER 38-39 |
| 11/17/2014 | Declaration of Wesley Morris ISO Mot. for Preliminary Injunction | ER 40-46 |
| 11/17/2014 | Declaration of Michael Baryla ISO Mot. for Preliminary Injunction | ER 47-54 |
| 11/10/2014 | Complaint for Declaratory, Injunctive, or Other Relief | ER 55-62 |
| 08/07/2015 | Trial Court Docket | ER 63-70 |

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgrou.com

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA  90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; JEFFREY MULLEN; IMBERT & SMITHERS, INC.; and ALEX ROLSKY,<br><br>        Plaintiffs,<br><br>    v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; and STEPHEN J. LINDLEY, in his official capacity as Chief of the California Department of Justice Bureau of Firearms,<br><br>        Defendants. | Case No.:  2:14-cv-02626-TLN-DAD<br><br>**PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT**<br><br>**PRELIMINARY INJUNCTION APPEAL** |

**ER 01**

1               **NOTICE OF APPEAL – PRELIMINARY INJUNCTION APPEAL**

2         NOTICE IS HEREBY GIVEN that Plaintiffs Tracy Rifle and Pistol LLC, Michael Baryla,

3 Ten Percent Firearms, Wesley Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms,

4 Inc., Jeffrey Mullen, Imbert & Smithers, Inc., and Alex Rolsky, plaintiffs in the above-captioned

5 case, hereby appeal to the United States Court of Appeals for the Ninth Circuit from an order

6 denying Plaintiffs' Motion for Preliminary Injunction entered in this action on July 16, 2015

7 (Docket 32), attached as Exhibit A.

8         Plaintiffs' Representation Statement is attached to this Notice as required by Ninth Circuit

9 Rule 3-2(b).

10

11 Dated:  July 27, 2015                BENBROOK LAW GROUP, PC

12

13                                     By /s/ *Bradley A. Benbrook*

14                                    BRADLEY A. BENBROOK
                                   Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ER 02**

# REPRESENTATION STATEMENT

The undersigned represents Plaintiffs-Appellants Tracy Rifle and Pistol LLC, Michael Baryla, Ten Percent Firearms, Wesley Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms, Inc., Jeffrey Mullen, Imbert & Smithers, Inc., and Alex Rolsky, and no other party. Pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and Circuit Rule 3-2(b), Plaintiffs-Appellants submit this Representation Statement.  The following list identifies all parties to the action, and it identifies their respective counsel by name, firm, address, telephone number, and email, where appropriate.

| PARTIES | COUNSEL OF RECORD |
|---|---|
| Plaintiffs-Appellants Tracy Rifle and Pistol LLC, Michael Baryla, Ten Percent Firearms, Wesley Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms, Inc., Jeffrey Mullen, Imbert & Smithers, Inc., and Alex Rolsky | BENBROOK LAW GROUP, PC<br>Bradley A. Benbrook (SBN 177786)<br>Stephen M. Duvernay (SBN 250957)<br>400 Capitol Mall, Suite 1610<br>Sacramento, CA  95814<br>Telephone:  (916) 447-4900<br>Facsimile:  (916) 447-4904<br>brad@benbrooklawgroup.com<br>steve@benbrooklawgrou.com<br><br>Eugene Volokh (SBN 194464)<br>UCLA School of Law<br>405 Hilgard Ave.<br>Los Angeles, CA  90095<br>Telephone: (310) 206-3926<br>Facsimile: (310) 206-7010<br>volokh@law.ucla.edu |
| Defendants-Appellees Kamala D. Harris, in her official capacity as Attorney General of California; and Stephen J. Lindley, in his official capacity as Chief of the California Department of Justice Bureau of Firearms | Kamala D. Harris (SBN 146672)<br>Attorney General of California<br>Tamar Pachter (SBN 146083)<br>Supervising Deputy Attorney General<br>Nelson R. Richards (SBN 246996)<br>Emmanuelle S. Soichet (SBN 290754)<br>Deputy Attorneys General<br>2550 Mariposa Mall, Room 5090<br>Fresno, CA 93721<br>Telephone: (559) 477-1688<br>Fax: (559) 445-5106<br>E-mail: Nelson.Richards@doj.ca.gov |

ER 03

Dated:  July 27, 2015

BENBROOK LAW GROUP, PC

By /s/ *Bradley A. Benbrook*
BRADLEY A. BENBROOK
Attorneys for Plaintiffs

ER 04

1

2

3

4

5

6

7

8

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11

12   TRACY RIFLE AND PISTOL LLC;          No.  2:14-cv-02626-TLN-DAD
     MICHAEL BARYLA; TEN PERCENT
13   FIREARMS; WESLEY MORRIS;
     SACRAMENTO BLACK RIFLE, INC.;
14   ROBERT ADAMS; PRK ARMS, INC.;        **ORDER**
     JEFFREY MULLEN; IMBERT &
15   SMITHERS, INC.; ALEX ROLSKY

16                  Plaintiffs,

17        v.

18   KAMALA D. HARRIS, in her official
     capacity as Attorney General of California;
19   and STEPHEN J. LINDLEY, in his official
     capacity as Chief of the California
20   Department of Justice Bureau of Firearms,

21                  Defendants.

22

23        The matter is before the Court on Plaintiffs Tracy Rifle and Pistol LLC ("Tracy Rifle"),

24   Michael Baryla, Ten Percent Firearms ("Ten Percent"), Wesley Morris, Sacramento Black Rifle,

25   Inc., Robert Adams, PRK Arms, Inc., Jeffrey Mullen, Imbert & Smithers, Inc. ("Imbert &

26   Smithers"), and Alex Rolsky's Motion for a Preliminary Injunction.  (ECF No. 5.)  Defendants

27   Kamala D. Harris and Stephen J. Lindley, acting in their official capacities, oppose the motion.

28   (ECF No. 18.)  The Court has carefully considered the arguments raised in the parties' filings, and

                                        1

1   for the reasons discussed below, DENIES the motion for a preliminary injunction.

2                                          **BACKGROUND**

3          Plaintiffs – retail firearms dealers – argue that California Penal Code § 26820 violates

4   their free speech rights under the First Amendment of the U.S. Constitution, and therefore seek to

5   preliminarily enjoin Defendants from enforcing the section.  Section 26820 provides: "No

6   handgun or imitation handgun, or placard advertising the sale or other transfer thereof, shall be

7   displayed in any part of the premises where it can readily be seen from the outside."

8          Specifically, on September 12, 2014, the California Department of Justice Bureau of

9   Firearms ("DOJ") inspected Tracy Rifle and Pistol LLC.  At the time of the inspection, four of

10  Tracy Rifle's exterior windows were covered with vinyl decals depicting firearms: three

11  handguns and a rifle.  The firearms could be purchased in California and were carried by Tracy

12  Rifle.   The DOJ issued a "Notification of Inspection Findings" because of the handgun decals

13  and required Tracy Rifle and Michael Baryla to take corrective action by February 11, 2015.

14  (ECF No. 5-1 at 3–4.)

15         On or about February 23, 2010, the DOJ inspected Ten Percent Firearms in Taft,

16  California.  Displayed on a post in Ten Percent's parking lot was a three-foot by two-foot metal

17  sign shaped like a revolver, hung approximately nine feet off the ground.  The DOJ inspector

18  informed Plaintiff Morris that the sign violated the handgun advertising restriction, and Ten

19  Percent Firearms took the sign down.  The DOJ then issued a "Notification of Inspection

20  Findings" citing Ten Percent and Morris for violating the ban.  (ECF No. 5-1 at 4.)

21         On January 28, 2015, the DOJ inspected Imbert & Smithers.  At the time of inspection the

22  building's exterior displayed the dealership's logo, which incorporates the outline of a single-

23  action revolver.  The DOJ issued a "Notification of Inspection Findings" citing Imbert &

24  Smithers and Alex Rolsky for, among other things, violating the handgun advertising restriction,

25  and requiring them to take corrective action by July 28, 2015.  (ECF No. 17 at 1.)

26         Plaintiffs Sacramento Black Rifle, Inc. and its owner Robert Adams, and Plaintiffs PRK

27  Arms, Inc. and its owner Jeffrey Mullen, state they desire to display on-site handgun advertising

28  at these stores.  (ECF No. 22 ¶ 32.)

                                                   2

**ER 06**

1      On November 10, 2014, Plaintiffs filed a complaint in this Court, claiming section 26820

2   deprived Plaintiffs of rights secured by the First Amendment, in violation of 42 U.S.C. § 1983,

3   and seeking declaratory and injunctive relief.  (ECF No. 1.)  On November 17, 2014, Plaintiffs

4   filed the instant motion for a preliminary injunction.[1]  (ECF No. 5.)  On February 23, 2015,

5   Defendants filed an opposition.  (ECF No. 18.)  On March 4, 2015, Plaintiffs filed their reply.

6   (ECF No. 26.)

## STATUTORY FRAMEWORK

8      **I.      Injunctive Relief**

9      Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

10  showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.,* 555

11  U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)).

12     "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

13  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

14  balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555

15  U.S. at 20.

16     The Ninth Circuit also permits analysis via a sliding scale approach, such that "'serious

17  questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can

18  support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

19  likelihood of irreparable injury and that the injunction is in the public interest." *Arc of California*

20  *v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citing *Alliance for the Wild Rockies v. Cottrell,*

21  632 F.3d 1127, 1135 (9th Cir. 2011)).

22     **II.     First Amendment Principles**

23     The First Amendment principles at issue in this case mostly relate to the "likelihood of

24  success on the merits" prong of the *Winter* test.  However, given the underlying importance of the

25  aforementioned principles to all four prongs, and the fact that the Government has the burden to

26  justify its speech restrictions, the Court notes some relevant principles at the outset.

27  _____
[1] Plaintiffs Imbert & Smithers and Alex Rolsky joined in the motion for preliminary injunction on February 2, 2015.
(ECF No. 20.)  A First Amended Complaint adding Imbert & Smithers and Rolsky was filed on February 27, 2015.
28  (ECF No. 22.)

3

**ER 07**

1    As a starting point for review, the Court uses the test set forth in *Central Hudson Gas &*

2  *Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 566 (1980):

3              At the outset, we must determine whether the expression is
      protected by the First Amendment. For commercial speech to come
4              within that provision, it at least must concern lawful activity and
      not be misleading. Next, we ask whether the asserted governmental
5              interest is substantial. If both inquiries yield positive answers, we
      must determine whether the regulation directly advances the
6              governmental interest asserted, and whether it is not more extensive
      than is necessary to serve that interest.
7

8  The parties agree that the speech at issue – advertisements made on the premises of firearms

9  stores – concerns lawful activity and is not misleading, and so is commercial speech protected by

10  the First Amendment.  Therefore only the final three factors are disputed in this case.

11    Courts are to "review with special care regulations that entirely suppress commercial

12  speech in order to pursue a nonspeech-related policy. In those circumstances, a ban on speech

13  could screen from public view the underlying governmental policy … in recent years [the

14  Supreme Court] has not approved a blanket ban on commercial speech unless the expression itself

15  was flawed in some way, either because it was deceptive or related to unlawful activity." *Central*

16  *Hudson*, 447 U.S. at 566 n. 9.

17    It is error to "conclude[] that *all* commercial speech regulations are subject to a similar

18  form of constitutional review simply because they target a similar category of expression. The

19  mere fact that messages propose commercial transactions does not in and of itself dictate the

20  constitutional analysis that should apply to decisions to suppress them." *44 Liquormart, Inc. v.*

21  *Rhode Island*, 517 U.S. 484, 501 (1996).  "[W]hen a State entirely prohibits the dissemination of

22  truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair

23  bargaining process, there is far less reason to depart from the rigorous review that the First

24  Amendment generally demands." *Id.*

25    Further, "[t]he First Amendment requires heightened scrutiny whenever the government

26  creates 'a regulation of speech because of disagreement with the message it conveys.'" *Sorrell v.*

27  *IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011) (citing *Ward v. Rock Against Racism*, 491 U.S.

28  781, 791 (1989)).  "'[T]he fear that people would make bad decisions if given truthful

4

**ER 08**

1  information' cannot justify content-based burdens on speech." *Id.* at 2658 (citing *Thompson v.*

2  *Western States Medical Center,* 535 U.S. 357, 374 (2002)).

3  **ANALYSIS**

4      **I.**       **<u>Likelihood of Success on the Merits</u>**

5         For a preliminary injunction to issue, it is Plaintiffs' burden to show a likelihood of

6  success on their challenge to the constitutionality of section 26820.  However, because the

7  Government is restricting protected speech it has the burden to show that section 26820 passes

8  scrutiny.  *See Burkow v. City of Los Angeles*, 119 F. Supp. 2d 1076 (C.D. Cal. 2000); *Utah*

9  *Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061 (10th Cir. 2001) (holding that even on appeal

10  of a denial of a preliminary injunction, which favored the Government, the burden remained on

11  the Government to justify the speech restrictions).  The Court follows the analysis done in

12  *Burkow* and *Utah Licensed* and finds that if the Government does not meet its burden under

13  *Central Hudson*, then for the purposes of the preliminary junction Plaintiff has shown a likelihood

14  of success on the merits.[2]

15         The parties do not dispute that the speech at issue is protected by the First Amendment.

16  Thus, the first part of the *Central Hudson* test is met.  Plaintiffs argue that Defendants cannot

17  meet their burden of establishing one or more of the other three prongs: (1) that the restriction at

18  issue seek to further a substantial government interest; (2) that the restriction directly advance the

19  government's interest; and (3) the restriction be no more extensive than is necessary to serve that

20  interest.  *Central Hudson*, 447 U.S. at 566.

21  //

22

23  [2] A different way of stating the two burdens would be: "As the moving party, the plaintiff bears the burden of clearly
showing that the *Central Hudson* test will not be satisfied by this particular regulation of commercial speech."  *Bad*

24  *Frog Brewery, Inc. v. New York State Liquor. Auth.* 1996 WL 705786, at *3 (N.D.N.Y. Dec. 5, 1996).  This way of
stating the burdens could imply a lesser burden on the Government, such that if the Government raises enough

25  evidence to show it could justify the restriction – i.e. the Government has cast enough doubt on whether Plaintiff
could succeed on the merits if the case proceeded to trial – then for the purposes of a preliminary injunction the

26  plaintiff is not likely to succeed on the merits.  On appeal of the district court's decision in *Bad Frog* – which was an
appeal of the preliminary injunction and a separate summary judgment order – the 2nd Circuit did not expressly take

27  up whether the district court's statement of the two burdens was correct.  However, the Second Circuit's discussion
indicated that even on an appeal, in which the injunction had been issued in favor of the Government, it was still the

28  Government's burden to show that the *Central Hudson* factors were met.  *Bad Frog Brewery, Inc. v. New York State*
*Liquor Auth.*, 134 F.3d 87, 97–101 (2d Cir. 1998).

5

**ER 09**

1          A.  <u>Substantial interest</u>

2              The Court looks first to whether section 26820 seeks to further a substantial government

3     interest.  The Government states that section 26820 serves California's public health and safety

4     interest in reducing handgun-related crime and violence.  The Government directs the Court to

5     data indicating that about 70% to 80% of firearm homicides and 90% of nonfatal firearm

6     victimizations were committed with a handgun, nationwide, from 1993 to 2011; that between

7     2005 and 2009 over 1,000 Californians used handguns to commit suicide; and that in 2013 90%

8     of guns recovered from crime scenes in California and sent to the state's crime laboratory were

9     handguns.  *See* Kamala D. Harris, Attorney General, *2013 Firearms Used in the Commission of*

10    *Crimes*; Bureau of Justice Statistics, U.S. Department of Justice, *Firearm Violence, 1993-2011*

11    (2013); California Department of Public Health's California Violent Death Reporting System

12    User-Generated Report, Suicides 2005–2009.  (ECF No. 19, Ex.'s 12, 13, 14.)  The Government

13    further explains that the law was enacted in 1923 to curb rising handgun violence, and the current

14    statute is essentially the same, with only minor alterations in language.  (ECF No. 18 at 3–4.)

15            Plaintiffs argue that an original motivation for enacting the instant ban was curbing

16    immigrant violence, which is an improper justification and irrelevant today.  *See e.g. New*

17    *Firearms Law Effective on August 7*, S.F. Chron., July 15, 1923 (quoting the President of the

18    Sacramento Rifle and Revolver Club for praising the ban's intended "salutary effect in checking

19    tong wars among the Chinese and vendettas among our people who are of Latin descent") (ECF

20    No. 19, Ex. 6).  This point is noted, but "the fact that the original motivation behind the ban []

21    today might be considered an insufficient justification for its perpetuation does not detract from

22    the force of the other interests the ban continues to serve."  *Ohralik v. Ohio State Bar Ass'n*, 436

23    U.S. 447, 460 (1978).  *See also Bolger v. Young Products Corp.*, 463 U.S. 60, 70 (1983).

24            The Court agrees that public health and safety issues associated with handgun crime and

25    violence are a substantial Government interest, and that section 26820 seeks to further that

26    interest.

27          B.  <u>Directly advance the interest</u>

28              The Court looks next to whether section 26820 directly advances the Government's stated

6

**ER 10**

1  interest.  The Government identifies one overriding rationale for section 26820: by restricting

2  handgun advertisements that are visible from outside the store, section 26820 decreases the

3  number of emotion-driven impulse purchases of handguns, thereby directly reducing handgun

4  crime and violence.  The Government makes two arguments in support of this position: 1) that the

5  restriction is consistent with courts' holding that the government may restrict advertising in order

6  to dampen demand; and 2) common sense and public health research support that conclusion that

7  limiting impulse buys reduces handgun crime and violence.

8       As to the first argument, the Supreme Court and Ninth Circuit have held that the

9  government may restrict advertising in order to dampen demand.  *See U.S. v. Edge Broad*, 509

10  U.S. 418, 434 (1993) ("If there is an immediate connection between advertising [for gambling]

11  and demand, and the federal regulation decreases advertising, it stands to reason that the policy of

12  decreasing demand for gambling is correspondingly advanced"); *Coyote Pub., Inc. v. Miller*, 598

13  F.3d 592, 608 (9th Cir. 2010) (advertising restrictions on legal brothels in Nevada "directly and

14  materially advance Nevada's interest in limiting commodification by reducing the market demand

15  for … the exchange of sex acts for money"); *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 959–62 (9th

16  Cir. 1986) (internal quotation marks omitted) (upholding California ban on retail point-of-sale

17  advertisements for alcoholic beverages paid for by manufacturers, and reasoning that the ban, in

18  part, served to "prohibit[] the overly aggressive marketing techniques that had been characteristic

19  of large-scale alcoholic beverage concerns"); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 557

20  (2001) ("W[e] have acknowledged the theory that product advertising stimulates demand for

21  products, while suppressed advertising may have the opposite effect"); *44 Liquormart*, 517 U.S.

22  at 504–509 (finding that the Government had not produced evidence showing that a restriction on

23  advertising alcohol prices reduced consumption of alcohol, but indicating in its analysis that such

24  evidence could support the "directly advance" prong of the *Central Hudson* test).

25       However, notwithstanding the fact that our reviewing courts have permitted advertising

26  restrictions in order to dampen demand, "when a State entirely prohibits the dissemination of

27  truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair

28  bargaining process, there is far less reason to depart from the rigorous review that the First

1   Amendment generally demands." *Liquormart,* 517 U.S. at 501.  A State "may not seek to remove

2   a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading

3   advertisments…." *Sorrell,* 131 S. Ct. at 2671.  The "fear that people would make bad decisions if

4   given truthful information" has been rejected as the basis for a commercial speech restriction, and

5   a state may not pursue its policy preferences 'by keeping the public in ignorance.'" *Thompson,*

6   535 U.S. at 374, 375 (citing *Virginia Bd. of Pharmacy v. Virginia Citizens Cons. Counc., Inc.* 425

7   U.S. 748, 770 (1976)).  "[T]he power to prohibit or to regulate particular conduct does not

8   necessarily include the power to prohibit or regulate speech about that conduct." *Greater New*

9   *Orleans Broadcasting Ass'n, Inc. v. U.S.* 527 U.S. 173, 174 (1999).

10         On balance, the weight of authority shows strong disfavor with restrictions on

11   advertisements that are neither misleading nor related to the fair bargaining process, which is the

12   case with the advertisements at issue here.  *Liquormart,* 517 U.S. at 501. However, it is

13   permissible in certain circumstances for the government to restrict advertising in order to dampen

14   demand for legal products.  The Court acknowledges that this is a distinct case, in that the product

15   at issue is handguns.  However, Plaintiffs identify no legal authority that in this context,

16   advertising designed to dampen demand is per se violative of the First Amendment.  Therefore at

17   this juncture the Court does not make that finding.

18         The Government's second argument, still under the second prong of the *Central Hudson*

19   analysis, is that simply put it is reasonable to conclude that impulsive handgun purchases made

20   after a customer sees an advertisement outside the store – as opposed to purchases made with

21   deliberation after the customer has already entered the store – contribute to greater handgun crime

22   and violence.  On this point, the Government appeals to "history, consensus, and 'simple common

23   sense.'" *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (citing *Burson v. Freeman,*

24   504 U.S. 191, 211 (1992)).  The Government submits further legislative history and data – in

25   addition to the data referenced, *supra* – to establish the link between handgun ownership and

26   crime, violence, and suicide.  *See e.g.* John Henry Sloan et al., *Hangdun Regulations, Crime,*

27   *Assaults, and Homicide: A Tale of Two Cities*, 318 New Eng. J. Med. 913, 922 (1988) (comparing

28   Seattle, Washington, with Vancouver, British Columbia, and concluding that "[v]irtually all of

**ER 12**

the excess risk of aggravated assault in Seattle was explained by a sevenfold higher rate of assaults involving firearms.  Despite similar rates of robbery and burglary and only small differences in the rates of simple and aggravated assault, … Seattle had substantially higher rates of homicide than Vancouver.  Most of the excess mortality was due to an almost fivefold higher rate of murders with handguns in Seattle.”); Mathew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 New Eng. J. Med. 898, 990 (2008) (“The empirical evidence linking suicide risk in the United States to the presence of firearms in the home is compelling.  There are at least a dozen U.S. case-control studies in the peer-reviewed literature, all of which have found that a gun in the home is associated with an increased risk of suicide.  The increase in risk is large, typically 2 to 10 times that in homes without guns.”); Garen J. Wintemute et al., *Morality Among Recent Purchasers of Handguns*, 341 New Eng. J. Med. 1583, 1586 (1999) (“[P]urchase of a handgun is associated with substantial changes in the risk of violent death.”) (ECF No. 19, Ex.’s 15, 17, 20.)

In response, Plaintiffs argue that the aforementioned data do not speak to the relevant issue, which is whether impulse purchases of handguns contribute to crimes or violence, not whether more purchases of handguns, as a general matter, contributes to crimes or violence.  Plaintiffs produce data, for instance, showing that the average period of time between the first retail sale of a firearm and recovery of the firearm by law enforcement is nearly 14 years.  *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Trace Data – 2013 (California)* at 8.[3]  The same set of data shows that in 2013, law enforcement agencies recovered 32,343 firearms used in connection with a crime in California, but less than two percent were recovered within 3 months of purchase.  *Id.* at 3, 8.  Apparently the argument here would be – though the relevance is questionable – that firearms are less likely to be used in crimes shortly after their purchase.

Plaintiffs also dispute that it is reasonable to assume limiting impulse buys limits handgun violence, because there is at least a ten day waiting period between the time of the buy and the release to the purchaser.  *See* Cal. Penal Code §§ 26815(a) and 27540(a).  Plaintiffs argue that the

---

[3] Available at http://1.usa.gov/1AydtlK.  Accessed June 17, 2015.

1   instant ban, aimed only at handgun advertising, is not supported by common sense because there

2   is not a corresponding ban on the advertising of other guns such as hunting rifles.  Plaintiffs argue

3   that it is not reasonable, for instance, to assume a purchaser will be unmoved by a "large neon

4   sign blaring 'GUNS GUNS GUNS' or a fifteen-foot-high depiction of a modern sporting rifle,"

5   but will be moved by decals in a window depicting handguns or a sign containing the word

6   "handgun".  (ECF No. 26 at 11.)  Plaintiffs also point out that firearms dealers may advertise

7   handguns online and in broadcast and print media.  (ECF No. 5-1 at 11.)  Hypothetically,

8   Plaintiffs argue, a dealer may even "hire someone to dress up as a revolver and stand on the

9   public sidewalk or a major intersection, directing consumers to the store," since this would not be

10   speech occurring on the premises.  (ECF No. 5-1 at 11–12.)

11       The Court agrees that it is reasonable to infer that precluding firearms stores from

12   advertising handguns in a way that can be seen from outside the store – for instance precluding a

13   sign that says "Handguns for Sale" – will prevent some purchases that would result from

14   passersby seeing the advertisement and entering the store to make a purchase.  The

15   aforementioned data cited by the Government also shows a clear connection between the

16   increased circulation of handguns and increased handgun-related violence.  However, the specific

17   issue is whether the instant ban limits impulse buys and in turn leads to less handgun crime and

18   violence, not as a general matter whether less handguns means less crime and violence.  The

19   Government does not cite any data in its Opposition – although it should be acknowledged the

20   difficulties that may lie in finding such data, if it exists at all – clearly bearing on this specific

21   issue.

22       Further, in light of the fact that there is a ten day wait period between the time of the buy

23   and the release to the purchaser, the fact that there are not corresponding advertising restrictions

24   on other firearms such as rifles, and the fact that handgun advertisements are not banned from

25   online, broadcast, and print media, the Government's common sense argument is unsubstantiated.

26   In particular, the fact that there is a ten day waiting period between the purchase and the transfer

27   of the firearm calls into question what an "impulse buy" would mean.  One obvious scenario

28   underlying the Government's justification would be a person wanting to commit a violent act,

1    seeing the sign "Handguns for Sale" while passing a store, taking possession of the handgun at

2    that time, and then carrying out the act.  But generally speaking, this type of scenario is not

3    possible given a ten day waiting period.[4]  It is possible that the Government wishes to lessen

4    purchases by the type of person who would buy a handgun on impulse after seeing an

5    advertisement visible from outside the store, and who would proceed into the store to start the

6    paperwork process even if she could not take possession at that time.  However, the Government

7    does not identify evidence – and there is not an obvious common sense connection – leading to

8    the conclusion that limiting purchases by this type of person either materially limits the numbers

9    of handgun purchases in California, or materially limits the handgun crime and violence

10   associated with such purchases.

11        The legislative history and data cited by the Government in its Opposition (ECF No. 18),

12   and the Government's common sense argument, do not adequately support the position that

13   section 26820, by limiting impulse buys, will in fact alleviate handgun crime and violence to a

14   material degree.  *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).  Therefore, the Court finds the

15   Government has not met its burden under the "directly advance" prong of *Central Hudson*.

16        C.  No more restrictive than necessary

17        Under the final prong of *Central Hudson*, the Government must show that section 26820

18   is no more restrictive than necessary to achieve the Government's asserted interest.  On the one

19   hand, if the purpose of section 26820 is to minimize impulse buys of handguns by passersby and

20   thereby manage handgun violence, then a restriction on advertising of handguns targeted only at

21   passersby – with no bearing on print, online, or broadcast advertising – is proportional in scope to

22   the interest served.  *Bd. of Tr. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989).  However,

23   "[t]he four parts of the *Central Hudson* test are not entirely discrete. All are important and, to a

24   certain extent, interrelated: Each raises a relevant question that may not be dispositive to the First

25   Amendment inquiry, but the answer to which may inform a judgment concerning the other three."

26   _____

[4] The Court understands that, generally speaking, there is a 10 day waiting period before transfer of the firearm can
27   take place.  Cal. Penal Code §§ 26815(a) and 27540(a).  Although there are exceptions; *see e.g. Silvester v. Harris*,
     41 F. Supp. 3d 927 (E.D. Cal. 2014) (finding the 10 day wait period violated the Second Amendment for those who
     already lawfully possessed a firearm, or a valid Concealed Carry Weapon License, or both a valid Certification of
28   Eligibility and a firearm).

ER 15

1    *Greater New Orleans*, 527 U.S at 183–84 (1999).  "The [not more extensive than necessary] part

2    of the test complements the direct-advancement inquiry."  *Id.* at 188.  The Court has found there

3    is not adequate evidence produced by the Government showing how, specifically, limiting

4    impulse buys from passersby helps to manage handgun crime and violence.  For the same

5    reasons, the Government also does not show that section 26820 is no more extensive than

6    necessary to achieve that interest.  Section 26820 is narrowly tailored to advertisements targeting

7    passersby, but the Government has not shown that the ban is "narrowly tailored to achieve the

8    desired objective" of managing handgun crime and violence.  *Bd. of Tr. of State Univ.*, 492 U.S.

9    at 477.

10         D.  Conclusion

11         The Government does not meet its burden of showing that the *Central Hudson* elements,

12   in tandem with the additional First Amendment principles discussed above, are met.  Therefore,

13   Plaintiffs raise serious questions going to the merits of their First Amendment challenge to

14   section 26820.  On balance – based on the arguments and evidence currently before the Court –

15   the Court also finds it is more likely than not that Plaintiffs will succeed on the merits of their

16   First Amendment claim.

17         **II.     Irreparable Injury**

18         A.  Compliance with section 26820

19         Plaintiffs provide no specific evidence that they will suffer irreparable harm due to the

20   immediate consequences of compliance with section 26820.  In the case of Tracy Pistol, this

21   would involve taking down window vinyls containing handgun decals, based on a DOJ inspection

22   that occurred in September, 2014.  In the case of Imbert & Smithers, this would involve taking

23   down a sign on the building's exterior displaying its dealership logo, based on an inspection

24   occurring in January, 2015.  In the case of Ten Percent Firearms, this involved taking down a

25   three by two foot sign shaped like a handgun hung outside the store, based on an inspection

26   occurring in February, 2010.  In the case of the other Plaintiffs, they would continue to be

27   prohibited, against their desire, from advertising in a way that violated section 26820.  One

28   obvious potential for harm would be the loss of prospective customers.  The Ninth Circuit has

ER 16

1   found that the "threatened loss of prospective customers or goodwill certainly supports a finding

2   of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240

3   F.3d 832, 841 (9th Cir. 2001).  However also, "[t]ypically, monetary harm does not constitute

4   irreparable harm." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009).

5   "Economic damages are not traditionally considered irreparable because the injury *can later be*

6   *remedied by a damage award.*" *Id.* at 852 (emphasis in original).  Further, as Plaintiffs

7   themselves argue, they are not prevented from advertising handguns in other media, or

8   advertising by use of the word "Guns" or with depictions of other firearms in a way visible from

9   outside the store.  Therefore, there is not specific evidence that Plaintiffs will lose business during

10  the pendency of this case.  In any event, Plaintiffs make no real argument to this effect.  Their

11  primary argument, discussed *supra*, relates to the inherent harm caused by a violation of their

12  commercial speech rights.

13          B.  Loss of license

14          Plaintiffs also argue that choosing not to comply with section 26820 may cause them to

15  lose their dealership licenses.  Plaintiffs do not support their position, however, that they may

16  willingly violate a section of the California Penal Code, and then by virtue of the immediate

17  consequences claim irreparable harm for the purposes of prevailing on a preliminary injunction

18  motion.  On this point, Plaintiffs reference *Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir.

19  2011), affirming a permanent injunction preventing the enforcement of a Maryland statute

20  effectively prohibiting an adult entertainment club that featured nude dancing from selling

21  alcohol.  The Fourth Circuit reasoned that "the threatened injury in this case (i.e., license

22  revocation) constituted 'direct penalization, as opposed to incidental inhibition' of First

23  Amendment rights, thus making it the sort that could not be remedied absent an action." *Id.* at

24  302.  However, the issue here is a preliminary injunction pending adjudication on the merits –

25  thus invoking Plaintiffs' burden of showing the need for an extraordinary remedy.  Plaintiffs also

26  reference *Giovani Carandola, Ltd v. Bason*, 303 F.3d 507 (4th Cir. 2002), affirming a preliminary

27  injunction preventing the enforcement of a North Carolina statute prohibiting entertainment

28  involving simulated sexual activity.  As to irreparable harm, the Fourth Circuit considered that

13

**ER 17**

1   plaintiff, an adult entertainment club operator, "face[d] the threat of a substantial fine and

2   temporary suspension of its license on the basis of past conduct, and prospectively, the loss of

3   valuable business opportunities." *Id.* at 520.  The Court agrees that *Giovani* offers support to

4   Plaintiffs' position, but it is extra-Circuit authority with no particularly similarity in facts to the

5   instant case.  Plaintiffs make no real argument that, outside of their injuries under the First

6   Amendment, they will suffer irreparable harm in the interim while their case is pending.

7           C.   Loss of First Amendment rights

8           The chief argument put forth by Plaintiffs is that the "loss of First Amendment rights, for

9   even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San*

10  *Clemente*, 684 F.3d 1196, 1207-08 (9th Cir. 2009) (citing *Elrod v. Burns*, 427 U.S. 347, 373

11  (1976)); *Valle del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013); *Sammartano v. First*

12  *Judicial Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002); *Jacobsen*

13  *v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir. 1987).  See *also Pac. Frontier v. Pleasant*

14  *Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) ("We therefore assume that plaintiffs have

15  suffered irreparable injury when a government deprives plaintiffs of their commercial speech

16  rights").

17          In *Klein*, for instance, the Ninth Circuit considered a city's anti-littering ordinance, which

18  prohibited the leafleting – on the topic of immigration policy – of unoccupied vehicles parked on

19  city streets.  After finding plaintiff likely would succeed on the merits of his First Amendment

20  claim, the *Klein* court found irreparable harm because a loss of First Amendment freedoms,

21  particularly in the political speech context, constituted irreparable injury.  *Klein*, 684 F.3d at

22  1207–08.  More on point because it involved commercial speech is *Valle del Sol*, which involved

23  a challenge to an Arizona state law that prohibited the solicitation of day laborers by a motor

24  vehicle occupant if the motor vehicle blocked traffic.  After concluding that plaintiffs likely

25  would succeed on the merits, the Ninth Circuit found irreparable harm on the basis that the

26  restriction on the instant commercial speech constituted a loss of First Amendment freedom and

27  so "unquestionably constitutes irreparable injury." *Valle del Sol*, 709 F.3d at 828.

28          On the other hand, "the assertion of First Amendment rights does not automatically

14

**ER 18**

1   require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he

2   shows a likelihood of success on the merits." *Hohe v. Casey*, 868 F.2d 69, 73 (1989).  It is

3   "purposeful unconstitutional suppression of speech [that] constitutes irreparable harm for

4   preliminary injunction purposes." *Goldie's Bookstore v. Superior Ct.,* 739 F.2d 466, 472 (9th

5   Cir. 1984).  It is the "direct penalization, as opposed to incidental inhibition, of First Amendment

6   rights [that] constitutes irreparable injury." *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir.

7   1983).

8   　　　In this case, section 26820 does not involve an incidental inhibition on First Amendment

9   rights; rather, its only purpose is to target a specific type of commercial speech, subject to DOJ

10  enforcement.  Therefore, the Court follows the plain directive from *Valle del Sol* and *Elrod* and so

11  finds Plaintiffs, because they have shown a likelihood of success on the merits on their First

12  Amendment claims, also show a likelihood of irreparable harm.

13  　　　However, the Court views this harm to carry minimal weight in the four-part test for

14  injunctive relief under *Winter*.  As discussed, Plaintiffs are not prevented from advertising

15  handguns in a similar way in other media, from advertising firearms in general in a way visible

16  from outside the store, or from advertising other firearms such as hunting rifles in a way visible

17  from outside the store.  So it appears that there are alternative means by which Plaintiffs' message

18  that they sell handguns can be conveyed.  It is the Government's point that a passerby seeing an

19  advertisement "Handguns for Sale," or a picture of a handgun, might be uniquely motivated to

20  enter the store to make a purchase.  But it is also reasonable to infer that the same customer,

21  viewing an advertisement that states only "Guns for Sale" in large neon letters, may still enter the

22  store impulsively.  It is also reasonable to infer that the same customer will understand that the

23  store sells handguns simply by virtue of the fact that it sells guns.  Drawing this inference perhaps

24  shows the pointlessness of section 26820.  But the fact that section 26820 is so narrowly drawn

25  does not weigh in Plaintiffs' favor for the purposes of finding irreparable harm.

26  　　　**III.**　　**Balance of the Equities and Public Interest**

27  　　　"Once an applicant satisfies the first two factors [likelihood of success on the merits and

28  irreparable harm], the traditional stay inquiry calls for assessing the harm to the opposing party

15

**ER 19**

1   and weighing the public interest. These factors merge when the Government is the opposing

2   party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *U.S. S.E.C. v. Wilde*, 2013 WL 2303761, at *8

3   (C.D. Cal. May 20, 2013); *Native Songbird Care and Conservation v. LaHood*, 2013 WL

4   3355657, at *12 (N.D. Cal. July 2, 2013).  In the instant case, the balance of equities does not tip

5   in Plaintiffs' favor and it is not in the public interest to issue a preliminary injunction.  This is due

6   to the conduct at issue – impulse buys and the relevance this may have to handgun crime and

7   violence – which the instant speech restriction is aimed at dampening, and the potential

8   consequences to the public and the Government based on ruling on an incomplete set of facts.

9          Plaintiffs argue an injunction would pose no threat to public safety since California's

10  direct restrictions on the purchase and sale of handguns would remain unaffected.  However, "[i]f

11  the judge grants the preliminary injunction to a plaintiff who it later turns out is not entitled to any

12  judicial relief – whose legal rights have not been violated – the judge commits a mistake whose

13  gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant

14  while it is in effect. If the judge denies the preliminary injunction to a plaintiff who it later turns

15  out is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the

16  irreparable harm, if any, that the denial of the preliminary injunction does to the plaintiff."

17  *American Hosp. Supply Corp. v. Hospital Products Ltd.* 780 F.2d 589, 593 (7th Cir. 1986)

18  (Posner, J.).  The costs of being mistaken, on the issue of whether the injunction would have a

19  detrimental effect on handgun crime, violence, and suicide, would be grave.  These costs would

20  affect members of the public, and they would affect the Government which is tasked with

21  managing handgun violence.  By contrast, the cost of continued compliance with section 26820

22  during the pendency of this lawsuit appears to render little harm to Plaintiffs, outside of the

23  inherent harm imposed by a violation of their First Amendment Rights.  With due consideration

24  to the serious First Amendment questions raised by Plaintiffs, and their likelihood of success on

25  the merits, the implications of being mistaken in this case indicate it is in the public interest to

26  deny the injunction, and the balance of the equities tips in the Government's favor.

27          On this point, the Court notes the four cases relied upon heavily by Plaintiffs throughout

28  their briefing: *44 Liquormart*, 517 U.S. at 516 (striking down prohibition on advertisement of

16

**ER 20**

1  retail prices of alcohol); *Greater New Orleans*, 527 U.S. at 194 (striking restriction on broadcast

2  advertisement of gambling by stations in Louisiana, where such gambling was legal); *Lorillard*,

3  533 U.S. at 571 (striking store-front, outdoor, and point-of-sale restrictions on tobacco

4  advertising); and *Thompson*, 535 U.S. at 377 (striking prohibition on advertisement of certain

5  pharmaceuticals).  Arguably, the instant subject matter – to the extent it may implicate handgun

6  crime and violence – presents a more serious subject matter than each of the aforementioned

7  cases.

8        There is also a distinction in the procedural posture of the instant motion and the

9  aforementioned cases.  In *Greater New Orleans*, *Lorillard*, and *Thompson*, the district courts

10  ruled on summary judgment motions.  In *44 Liquormart*, the district court ruled on a motion for

11  declaratory judgment, and only after extensive findings of fact regarding the effects of alcohol

12  advertising, based on a review of research studies and expert testimony.[5]  829 F. Supp. 543, 546-

13  49 (D.R.I. 1993).  In the instant case, while it appears the facts involving the advertisements

14  themselves and the DOJ's citations are not disputed, what is disputed is the relevance of the data

15  cited by the Government and its common sense rationale connecting impulse buys to handgun

16  crime and violence.  Given the seriousness of these issues, it is not in the public interest to impose

17  the extraordinary remedy of a preliminary injunction without further fact finding and more formal

18  guidance.  *See also Silvester v. Harris*, 41 F. Supp. 3d 927 (E.D. Cal. 2014) (conducting a bench

19  trial and thereafter invalidating the ten day waiting period in certain circumstances).

20        Finally, the Court notes that the instant injunction has the character of a mandatory

21  injunction, in that it seeks to alter the status quo by preventing California from enforcing section

22  26820.  "[W]here a party seeks mandatory preliminary relief that goes well beyond maintaining

23  the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary

24  injunction."  *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).  On

25              [5] The Court anticipates analogous findings of fact will be required at a later time.  On balance, submitting the instant

26  motion without oral argument, and declining to set an evidentiary hearing for the purposes of this motion, probably is more prejudicial to the Government than Plaintiffs. Some of the inconclusiveness as to the effect of the data or

27  legislative history cited by the Government – inconclusiveness which weighs against the Government – could have received greater import if, for instance, the Court heard expert testimony.  However, the Court views the matter as

28  submitted, without further hearing or gathering of evidence, to adequately capture the dispositive issues for this motion.

**ER 21**

1   the one hand, the status quo could be construed as the fact that the advertisements at issue either

2   were – or currently are – visible outside of the firearms stores who now bring suit, and thus are in

3   violation of section 26820.  For instance, as to Imbert & Smithers, the DOJ inspected Imbert &

4   Smithers in January, 2015, and required Imbert & Smithers to take down the logo from the

5   building's exterior by July 28, 2015.  (ECF No. 17 at 1.)  So the status quo could be construed as

6   holding in place Imbert & Smithers' display of their logo on the exterior of their building.

7   However, it is more accurate to state the status quo as the fact that the DOJ is currently enforcing

8   section 26820.  Though the parties do not provide briefing on the regularity of DOJ enforcement

9   in the past, the DOJ was at least enforcing the statute in February, 2010, when it inspected Ten

10   Percent Firearms.  (ECF No. 5-1 at 4.)  Plaintiffs seek an injunction that would prevent

11   enforcement of section 26820, across California, during the pendency of this lawsuit.  Granting

12   the injunction would alter the status quo by requiring California to alter its regulatory scheme and

13   practices as they pertain to firearms.  Therefore, the Court takes the requisite caution in deciding

14   against altering the status quo.  With due consideration to the free speech considerations raised by

15   Plaintiffs, which are also of public interest, a cautionary approach that favors denial greater serves

16   the public interest than granting the injunction.

17                                 * * * *

18        In consideration of the four factors under *Winter*, Plaintiffs' Motion for a Preliminary

19   Injunction is hereby DENIED.

20

21   Dated:  July 15, 2015

22

23

24

25

26

27

28

**ER 22**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904
   brad@benbrooklawgroup.com
5  steve@benbrooklawgroup.com

6

7  EUGENE VOLOKH (SBN 194464)*
   UCLA School of Law
   405 Hilgard Ave.
8  Los Angeles, CA  90095
   Telephone: (310) 206-3926
9  Facsimile: (310) 206-7010
   volokh@law.ucla.edu
10 *Application for admission to be submitted

11 Attorneys for Plaintiffs

12

13

14                 **UNITED STATES DISTRICT COURT**

15               **EASTERN DISTRICT OF CALIFORNIA**

16

17
   TRACY RIFLE AND PISTOL LLC;              Case No.:  2:14-cv-02626-TLN-DAD
18 MICHAEL BARYLA; TEN PERCENT
   FIREARMS; WESLEY MORRIS;
19 SACRAMENTO BLACK RIFLE, INC.;            **FIRST AMENDED COMPLAINT FOR**
   ROBERT ADAMS; PRK ARMS, INC.;            **DECLARATORY, INJUNCTIVE, OR**
20 JEFFREY MULLEN; IMBERT & SMITHERS,       **OTHER RELIEF**
   INC.; and ALEX ROLSKY,
21
                      Plaintiffs,
22
            v.
23
   KAMALA D. HARRIS, in her official capacity
24 as Attorney General of California; and
   STEPHEN J. LINDLEY, in his official capacity
25 as Chief of the California Department of Justice
   Bureau of Firearms,
26
                      Defendants.
27

28

**ER 23**

27.     But for Section 26820, Plaintiffs Tracy Rifle and Baryla would continue to display the decals and would display additional truthful, nonmisleading material advertising the sale of handguns.

28.     On or about February 23, 2010, the DOJ Bureau of Firearms inspected Ten Percent Firearms.  Displayed in the dealership's parking lot was a metal sign shaped like a revolver.  The DOJ inspector informed the dealership that the sign violated the handgun advertising restriction, and Ten Percent Firearms immediately removed the sign.  The Bureau of Firearms issued a "Notification of Inspection Findings" citing Plaintiffs Ten Percent Firearms and Morris for violating the handgun advertising ban.[3]

29.     But for Section 26820, Plaintiffs Ten Percent Firearms and Morris would display truthful, nonmisleading material advertising the sale of handguns.

30.     On January 28, 2015, the DOJ Bureau of Firearms inspected Imbert & Smithers.  At the time of the inspection, the building's exterior displayed a sign featuring the dealership's logo, which incorporates the outline of a single-action revolver.  The Bureau of Firearms issued a "Notification of Inspection Findings" citing Imbert & Smithers and Rolsky for violating Section 26820, and requiring them to take corrective action by July 28, 2015.  The DOJ may revoke Imbert & Smithers' dealer's license for unremedied violations of the Penal Code.

31.     But for Section 26820, Plaintiffs Imbert & Smithers and Rolsky would continue to display the dealership's sign, and would display additional truthful, nonmisleading material advertising the sale of handguns.

32.     Beyond direct enforcement of Section 26820, the threat of enforcement chills protected speech.  Plaintiffs Sacramento Black Rifle and PRK Arms desire to display truthful, nonmisleading on-site handgun advertising that is visible from the outside of their dealerships, and would do so, but for Section 26820 and the threat of forfeiting their licenses to sell firearms.

33.     An actual and judicially cognizable controversy exists between Plaintiffs and Defendants regarding whether Section 26820 violates the First Amendment.  Plaintiffs desire a

---

[3]     Ten Percent Firearms and Morris were cited for violating former Penal Code section 12071(b)(4), which has since been renumbered as Section 26820.

**ER 24**

1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  NELSON R. RICHARDS, State Bar No. 246996
   EMMANUELLE S. SOICHET, State Bar No. 290754
4  Deputy Attorney General
     2550 Mariposa Mall, Room 5090
5    Fresno, CA  93721
     Telephone:  (559) 477-1688
6    Fax:  (559) 445-5106
     E-mail:  Nelson.Richards@doj.ca.gov
7  *Attorneys for Defendants*
   *Kamala D. Harris and*
8  *Stephen J. Lindley*

9               IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

| 13 | **TRACY RIFLE AND PISTOL LLC;** | 2:14-cv-02626-TLN-DAD |
|---|---|---|
| 14 | **MICHAEL BARYLA; TEN PERCENT** | |
| | **FIREARMS; WESLEY MORRIS;** | |
| 15 | **SACRAMENTO BLACK RIFLE, INC.;** | |
| | **ROBERT ADAMS; PRK ARMS, INC.; and** | **DECLARATION OF NELSON R.** |
| 16 | **JEFFREY MULLEN,** | **RICHARDS IN SUPPORT OF** |
| | | **DEFENDANTS' OPPOSITION TO** |
| 17 | Plaintiffs, | **PLAINTIFFS' MOTION FOR** |
| | | **PRELIMINARY INJUNCTION** |
| 18 | **v.** | |
| | | Date:          March 12, 2015 |
| 19 | | Time:          2:00 p.m. |
| | **KAMALA D. HARRIS, in her official** | Judge:        Hon. Troy L. Nunley |
| 20 | **capacity as Attorney General of California;** | Action Filed:  Nov. 10, 2014 |
| | **and STEPHEN J. LINDLEY, in his official** | |
| 21 | **capacity as Chief of the California** | |
| | **Department of Justice Bureau of Firearms,** | |
| 22 | | |
| | Defendants. | |
| 23 | | |

24

25

26

27

28

**ER 25**

I, NELSON R. RICHARDS, declare:

    1.   I am a Deputy Attorney General with the California Department of Justice, Office of the Attorney General, and an attorney for Defendants Kamala D. Harris, in her official capacity as Attorney General of California, and Stephen J. Lindley, in his official capacity as Chief of the California Department of Justice Bureau of Firearms (collectively, "Defendants") in this matter.  I am an attorney at law duly licensed to practice before all courts of the State of California and admitted to practice before the United States District Court for the Eastern District of California. I have personal knowledge of the facts set forth below and if called as a witness, I could and would competently testify to them.

    2.   This declaration is made in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

    3.   Exhibit 1 is a true and correct copy of California's 1917 Firearms law, 1917 Cal. Stat. ch. 145.  I obtained a copy of the law from the print source.

    4.   Exhibit 2 is a true and correct copy of the *Proceedings of the Thirty-Fourth Annual Meeting of the National Conference of Commissioners on Uniform State Laws*, 47 Ann. Rep. A.B.A. 522 (1924).  I obtained a copy of this publication from the HeinOnline archive service.

    5.   Exhibit 3 is a true and correct copy of the *Handbook of the National Conference of Commissioners on Uniform State Laws* 728-32 (1924).  I obtained a copy of this publication from the print source.

    6.   Exhibit 4 is a true and correct copy of California's 1923 Firearms law, 1923 Cal. Stat. ch. 339.  I obtained a copy of the law from the print source.

    7.   Exhibit 5 is a true and correct copy of Charles V. Imlay, *The Uniform Firearms Act*, 12 A.B.A. J. 767, 767 (1926).  I obtained a copy of this publication from the HeinOnline archive service.

    8.   Exhibit 6 is a true and correct copy of *New Firearms Law Effective on August 7*, S.F. Chron., July 15, 1923.  I obtained a copy of the article from San Francisco Chronicle microfilm in the archive of the California State Library.

**ER 26**

# EXHIBIT  6

SAN FRANCISCO CHRONICLE. SUNDAY. JULY 15. 1923

## NEW FIREARMS LAW EFFECTIVE ON AUGUST 7

### Existing Licenses Inoperative After Dec. 31, 1924; Uniform System

### IS AIMED AT LAWLESS

### Possible Unconstitutionality of Clause Provided for in Drafting

Stringent regulations against carrying concealed firearms or explosives, and prohibition against possession of other deadly weapons become effective on August 7, under the Hawes bill signed by Governor Richardson.

The new measure will install a uniform licensing system for carrying concealed weapons. Licenses now in existence will become inoperative December 31, 1924.

**O. K. URGED**

Aimed at disarming the lawless, the bill provides exemptions and exceptions to preserve the rights of those using firearms for competition or hunting or for protection in outing trips. It was largely on the recommendation of R. T. McKisick, president of the Sacramento Rifle and Revolver Club, that Governor Richardson approved the measure.

McKisick classes it as a measure that introduces "an element of sanity into firearms legislation, so as to provide adequate punishments upon an increasing scale for the habitual gunman and, at the same time, permit law-abiding citizens to continue to own firearms for home defense and other legitimate uses."

**BILLS SIMILAR**

The bill, according to McKisick follows almost literally one offered in the United States Senate by Senator Capper and advocated by associations interested in the manufacture, sale and legitimate use of pistols and revolvers, as a model for a uniform bill to be introduced in each state. "It is frankly," he says, "an effort upon the part of those who know something about firearms to forestall the flood of fanatical legislation intended to deprive all citizens of the United States of the right to own and use, for legitimate purposes, firearms capable of being concealed upon the person."

The new measure change existing law by making the carrying of barred weapons such as blackjacks a felony instead of a misdemeanor. The provision against carrying explosives also is new.

**ACT EXPLAINED**

Possible unconstitutionality of the provision against possession of weapons by non-naturalized residents was admitted in McKisick's letter to the Governor urging signing of the bill, but he pointed out that if this clause should be held invalid the rest of the act will not be affected and that if it can be sustained that it will have a "salutary effect in checking long wars among the Chinese and vendettas among our people who are of Latin descent."

The provision for additional sentences where weapons are used in committing a felony is one with a sliding scale. The first time the added penalty is from five to ten years, the second from ten to fifteen, the third from 15 to 25 years, and only on the fourth offense it is possible to add more than 25 years to the sentence imposed for the crime itself.

## French Colony Celebrates Fall of the Bastile

Mayor Rolph     Cyril H. Oase, British Vice-Consul     George J. J. Marsity,     Julien Neltner,     Uhro Oyama,
D. M. Stanoyevitch, Serbian Consul     Acting Consul-General for Belgium     Consul-General of France     Consul-General of Japan
Leon L. Rey, Chairman of Day



## MAJ. KENDRICK STIRS FRENCH TO CHEERING

### Legion Leader Supports Ruhr Invasion to Collect Reparations From Germany

Thousands of members of the city's French colony and their friends met yesterday afternoon at Dreamland Auditorium to celebrate the 134th anniversary of the Fall of the Bastile. When Major Charles H. Kendrick, former national vice-commander of the American Legion and an officer of the Legion of Honor, declared that the United States stood solidly back of the French nation in its present course to get reparations and restitution from Germany, the throngs stood up and cheered.

The occasion was marked by the presence of the consuls of foreign nations and Mayor Rolph, who sat on the platform during the speeches, songs and entertainment features. Julien Neltner, consul-general of France, was an impressive figure in his full dress uniform which glittered with medals. His speech, which was delivered in French, rang with the love of country. He read messages of greeting from President Poincaré and from King Albert of the Belgians.

Major Kendrick, in his speech upholding France in her present actions, said:

"Restitution and reparation must be made by Germany. In spite of all that you may have heard and read, be assured that America stands solidly behind the French nation in its hour when it is trying to get restitution and reparation."

Other speakers emphasized the



Miss Constance Morela

The consuls of many nations and Mayor Rolph are seen as guests of honor at the French colony's celebration of the Fall of the Bastile, which was given in Dreamland Auditorium yesterday afternoon, attended by thousands of French people and their friends.

Mrs. Lucille Pruceet
Charles H. Kendrick
of the American Legion

## Slav Banker Here For Conference

### New S. F. Shipping Line Under Consideration

Establishment of a shipping line between San Francisco and Dubrovnik, principal seaport of Jugoslavia, is being considered by the new shipping commission of Jugoslavia, according to D. F. Andrievich, manager of the American department of the Adriatic Bank of Jugoslavia, who is in San Francisco for a conference with local bankers.

The ancient harbor of Dubrovnik, famous centuries ago as the "Athens of the Jugoslavs," is to be rebuilt and provided with rail connections throughout the world.

### Harding Rejoices With French Nation

WASHINGTON, July 14.—A message from President Harding to President Millerand of France on the occasion of Bastile day was made public today at the State department. The President said:

"My fellow countrymen rejoice with the people and the government of France on this day which consecrates the birth of the French republic. The United States is proud to have long been closely associated with a nation whose love of liberty is historic, and whose sacrifices for the maintenance of that sacred right have been heroic."

## Greatly Reduced Prices

### Urge You to Come and Save!

## Sommer & Kaufmann

ER 28

1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   NELSON R. RICHARDS, State Bar No. 246996
    EMMANUELLE S. SOICHET, State Bar No. 290754
4   Deputy Attorneys General
      2550 Mariposa Mall, Room 5090
5     Fresno, CA  93721
      Telephone:  (559) 477-1688
6     Fax:  (559) 445-5106
      E-mail:  Nelson.Richards@doj.ca.gov
7   *Attorneys for Defendants*
    *Kamala D. Harris and*
8   *Stephen J. Lindley*

9                   IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13  **TRACY RIFLE AND PISTOL LLC;**          2:14-cv-02626-TLN-DAD
    **MICHAEL BARYLA; TEN PERCENT**
14  **FIREARMS; WESLEY MORRIS;**
    **SACRAMENTO BLACK RIFLE, INC.;**
15  **ROBERT ADAMS; PRK ARMS, INC.; and**
    **JEFFREY MULLEN,**                      **DEFENDANTS' OPPOSITION TO**
16                                           **PLAINTIFFS' MOTION FOR**
                                             **PRELIMINARY INJUNCTION**
17                            Plaintiffs,
                                             Date:        March 12, 2015
18       **v.**                              Time:        2:00 p.m.
                                             Judge:       Hon. Troy L. Nunley
19                                           Action Filed: Nov. 10, 2014
    **KAMALA D. HARRIS, in her official**
20  **capacity as Attorney General of California;**
    **and STEPHEN J. LINDLEY, in his official**
21  **capacity as Chief of the California**
    **Department of Justice Bureau of Firearms,**
22
                              Defendants.
23

24

25

26

27

28

**ER 29**

1  California adopted the regulation of handgun advertising visible from the outside of firearms

2  retailers without alteration.[14]   The language of the 1923 law is essentially the same language now

3  found in section 26820.[15]

4       Although the legislative history of California's enactment of the Revolver Association's

5  model law may no longer exist, other contemporaneous sources provide clues to legislative intent.

6  According to one newspaper article, the Governor signed the bill at the behest of the president of

7  the Sacramento Rifle and Revolver Club.[16]   The bill was "[a]imed at disarming the lawless," and

8  the club president was quoted as saying that it was modeled on a similar bill offered in Congress

9  for sales in the District of Columbia.[17]   Concerns about handgun violence were indeed

10  widespread.  For instance, in 1922, a special committee of the ABA noted that 90% of murder

11  victims nationwide were killed with pistols and that firearms emboldened criminals to commit

12  violent crime.[18]   A few years later, the California Crime Commission reported that "[r]obberies

13  and burglaries are almost invariably committed with the aid of pistols" and that "[g]uns are

14  frequently used in murders, manslaughters, highjacking and rum-running."[19]

15       In 1925, the ABA's committee on uniform laws adopted the Revolver Association's model

16  firearms law, with minor changes, as the Uniform Firearms Act.[20]   The committee became

17  interested in the Revolver Association's approach after California enacted it, and as national

18  interest in firearms regulation swelled after bootleggers accidentally shot a sitting U.S. Senator on

19  the streets of Washington, D.C.[21]   The committee concluded that the model law had the "intrinsic

20  merits of clearness and simplicity," that it had been accepted by several jurisdictions, and that the

21      [14]  *See* Richards Decl. Ex. 4 (1923 Cal. Stat. ch. 339, § 11(4)).

22      [15]  *Compare id.* ("No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily

23  be seen from the outside.") *with* Cal. Penal Code § 26920 ("No handgun or imitation handgun, or placard advertising the sale or other transfer thereof, shall be displayed in any part of the premises where it can readily be seen from the outside.").

24      [16]  *See* Richards Decl. Ex. 6 (*New Firearms Law Effective on August 7*, S.F. Chron., July 15, 1923).

25      [17]  *Id.*; *see also* Richards Decl. Ex. 7 (S. 4012, 67th Cong. (1922)).

26      [18]  *See* Richards Decl. Ex. 8 (Committee on Law Enforcement, *For a Better Enforcement of the Law*, 8 A.B.A. J. 588, 590-91 (1922)).

27      [19]  Richards Decl. Ex. 9 (*Report of the California Crime Commission* 20 (1929)).

    [20]  *See* Richards Decl. Ex. 5 (Imlay, *supra* note 13, at 767).

28      [21]  Richards Decl. Ex. 3 (*Handbook*, *supra* note 11, at 712).

**ER 30**

1    These statistics demonstrate that handguns play a significant role in crime and violent

2 deaths. As compared with other types of firearms, they play a unique role in criminal activity and

3 suicide. The Ninth Circuit has recognized that government has a "self-evident" public-safety

4 interest in regulating handguns themselves to reduce the risk of firearm injury and death. *Jackson*

5 *v. City & Cnty. of S.F.*, 746 F.3d 953, 965 (9th Cir. 2014) (upholding ordinance requiring locked

6 storage of firearms in the home against Second Amendment challenge on intermediate-scrutiny

7 review). The government's public safety interest is equally strong in regulating commercial

8 speech. *See Fox*, 492 U.S. at 475 (recognizing substantial government interest in "promoting

9 safety and security" on public college campuses); *Metro Lights, LLC v. City of L.A.*, 551 F.3d

10 898, 904 (9th Cir. 2009) (recognizing "traffic safety" as a substantial government interest).

11  **B.    Section 26820 Directly Advances California's Interests by Decreasing the
12        Likelihood of Emotion-Driven Impulse Purchases of Handguns.**

13    Section 26820 directly advances California's public health and safety interest in

14 diminishing handgun-related crime and violence. The law targets impulse purchases of

15 handguns: it does not regulate advertising inside the store that can be seen by people already

16 there but that cannot be seen outside, nor does it regulate advertising that is not on or in a store; it

17 regulates only advertising that can be seen by persons near a store. Those people, who otherwise

18 might not enter the store, might respond on impulse to an advertisement in the store by entering

19 and purchasing a handgun—indeed, that is the self-evident purpose of that kind of advertising, to

20 draw people in and induce them to purchase a handgun. By restricting handgun ads that are

21 visible from outside the store, section 26820 is designed to decrease the number of emotion-

22 driven impulse purchases of handguns, and thereby reduce handgun-related crime and violence.

23 As set forth below, the law, public health research, as well as history, consensus and simple

24 common sense, demonstrate that public health and safety are advanced by limiting handgun

25 advertising visible from the outside of a store.

26  _____
    (…continued)

27  *Ass'n*, 436 U.S. 447, 460 ("[T]he fact that the original motivation behind the ban on solicitation
    today might be considered an insufficient justification for its perpetuation does not detract from

28  the force of the other interests the ban continues to serve.").

The advertising regulation in section 26820 has been in effect for almost a century. California enacted the law based upon a model law drafted by gun-rights advocates and adopted by other jurisdictions and the American Bar Association's committee on uniform laws.[41]  In the face of a rising national tide of handgun violence, those supporting the law, including section 26820's restrictions on advertising, viewed it as one of the "chief safeguards" in preventing criminals from getting guns.[42]

Public health research further bolsters the conclusion that dampening impulse purchases of handguns by regulating advertising will reduce handgun-related violent crime and suicide. Studies have shown that increased handgun ownership is associated with a higher murder rate.[43] Other studies have concluded that purchasing a handgun is associated with the risk of violent death.[44]  Handgun purchases are also associated with an increased risk of suicide, not just for the handgun buyer, but also for members of the buyer's household.[45]  One study published in the *New England Journal of Medicine* examined firearm and suicide data from California and concluded that buying a handgun increases the risk of suicide within a week of purchase, an effect that

---

[41]  *See, e.g.*, Richards Decl. Ex. 5 (Imlay, *supra* note 13, at 767).

[42]  *See* Richards Decl. Ex. 10 (Standing Committee Report, *supra* note 23, at 557-58).

[43]  *See* Richards Decl. Ex. 15 (John Henry Sloan et al., *Handgun Regulations, Crime, Assaults, and Homicide: A Tale of Two Cities*, 318 New Eng. J. Med. 913, 922 (1988) (comparing Seattle, Washington, with Vancouver, British Columbia, and concluding that "[v]irtually all of the excess risk of aggravated assault in Seattle was explained by a sevenfold higher rate of assaults involving firearms. Despite similar rates of robbery and burglary and only small differences in the rates of simple and aggravated assault, . . . Seattle had substantially higher rates of homicide than Vancouver. Most of the excess mortality was due to an almost fivefold higher rate of murders with handguns in Seattle."); *see also* Richards Decl. Ex. 16 (Michael Siegel et al., *The Relationship Between Gun Ownership and Firearm Homicide Rates in the United States, 1981-2010*, 103 Am. J. Pub. Health 2098, 2098 (2013) ("We found a robust relationship between gun ownership and firearm homicide rate . . . .")).

[44]  *E.g.*, Richards Decl. Ex. 17 (Peter Cummings et al., *The Association Between the Purchase of a Handgun and Homicide or Suicide*, 87 Am. J. Pub. Health 974, 974 (1997) ("Legal purchase of a handgun appears to be associated with a long-lasting increased risk of violent death.")); Richards Decl. Ex. 18 (Garen J. Wintemute et al., *Mortality Among Recent Purchasers of Handguns*, 341 New Eng. J. Med. 1583, 1586 (1999) ("[P]urchase of a handgun is associated with substantial changes in the risk of violent death.")); Richards Decl. Ex. 19 (K.M. Grassel et al., *Association Between Handgun Purchase and Mortality from Firearm Injury*, 9 Injury Prevention 48, 48 (2003) ("Among adults who died in California in 1998, those dying from violence were more likely than those dying from non-injury causes to have purchased a handgun.")).

[45]  Richards Decl. Ex. 17 (Cummings et al., *supra* note 44, at 975 ("Our finding of an increased relative risk for suicide among persons in families that purchased handguns agrees in general with the findings of previous case-control studies of suicide and gun ownership.")).

11

**ER 32**

remained apparent for at least six years.[46]  The authors reasoned that the increase could not be

explained by gun purchases by people contemplating suicide—fewer than 10% of people who

committed suicide or attempted to commit suicide purchased guns for that purpose, and most

firearm suicides occurred well after the gun had been purchased.[47]  Another study found a "very

strong association between handgun purchase and subsequent gun suicide."[48]  These results are

typical.  A 2008 *New England Journal of Medicine* article emphasized the wealth of research

finding an association between guns in the home and suicide.[49]

Together, these studies establish the modern link between handgun ownership and violent

crime and suicide that has been noted for more than a century.

### 3.   Plaintiffs' arguments that section 26820 does not directly advance California's interests are misguided.

Plaintiffs rely on *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011), to support their

argument that no attempt by the government to limit the sale of a product can withstand scrutiny.

*See* Pls.' Br. 11, ECF No. 5-1.  But that case is inapposite because it did not consider a restriction

on advertising at all; it considered a Vermont statute regulating the sale, disclosure, and use of

pharmacy records that reveal the prescribing practices of doctors, to prevent pharmaceutical

companies specifically from using them to market to doctors.  *Sorrell*, 131 S. Ct. at 2659, 2662-

63.  The Court held the law unconstitutional as a content- and speaker-based restriction on speech

that did not survive heightened scrutiny because the law did not directly advance the state's

proferred interests.  *See id.* at 2672.  The state asserted a privacy interest, but the purportedly

private information was available to "anyone for any reason save one," pharmaceutical

marketing; and the state asserted an interest in lowering healthcare costs, but essentially

abandoned that interest at oral argument.  *See id.* at 2668, 2670.

---

[46]  Richards Decl. Ex. 18 (Wintemute et al., *supra* note 44, at 1583).
[47]  *Id.* at 1587.
[48]  Richards Decl. Ex. 19 (Grassel et al., *supra* note 44, at 51).
[49]  Richards Decl. Ex. 20 (Mathew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 New Eng. J. Med. 898, 990 (2008) ("The empirical evidence linking suicide risk in the United States to the presence of firearms in the home is compelling.  There are at least a dozen U.S. case-control studies in the peer-reviewed literature, all of which have found that a gun in the home is associated with an increased risk of suicide.  The increase in risk is large, typically 2 to 10 times that in homes without guns . . . .")).

1   BENBROOK LAW GROUP, PC
    BRADLEY A. BENBROOK (SBN 177786)
2   STEPHEN M. DUVERNAY (SBN 250957)
    400 Capitol Mall, Suite 1610
3   Sacramento, CA 95814
    Telephone: (916) 447-4900
4   Facsimile: (916) 447-4904

5   Attorney for Plaintiffs

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11

12  TRACY RIFLE AND PISTOL LLC;          Case No.:
    MICHAEL BARYLA; TEN PERCENT
13  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;        **DECLARATION OF JEFFREY MULLEN**
14  ROBERT ADAMS; PRK ARMS, INC.; and    **IN SUPPORT OF MOTION FOR**
    JEFFREY MULLEN,                      **PRELIMINARY INJUNCTION**

15                 Plaintiffs,

16         v.

17  KAMALA D. HARRIS, in her official capacity
    as Attorney General of California; and
18  STEPHEN J. LINDLEY, in his official capacity
    as Chief of the California Department of Justice
19  Bureau of Firearms,

20                 Defendants.

21

22

23

24

25

26

27

28

**ER 34**

I, Jeffrey Mullen, declare:

1.      I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.      I am the President and CEO of PRK Arms, Inc., which operates firearms dealerships in Fresno, Visalia, and Turlock, California. PRK Arms is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership.

3.      PRK Arms Inc. specializes in sales of handguns to law abiding citizens as a significant part of our business and we wish to issue truthful, non-misleading advertising to the public and engage in speech about constitutionally protected firearms. We pay thousands in rent between our three stores and are unable to advertise our primary source of business.

4.      But for Section 26820, we would display truthful, non-misleading material advertising the sale of handguns at the dealerships.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 11, 2014 in California.

_____
JEFFREY MULLEN

ER 35

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904

5

6  EUGENE VOLOKH (SBN 194464)
   UCLA School of Law
7  405 Hilgard Ave.
   Los Angeles, CA  90095
8  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
   volokh@law.ucla.edu
9
   Attorneys for Plaintiffs
10

11              **UNITED STATES DISTRICT COURT**

12             **EASTERN DISTRICT OF CALIFORNIA**

13

14

15  TRACY RIFLE AND PISTOL LLC;          Case No.:  2:14-cv-02626-TLN-DAD
    MICHAEL BARYLA; TEN PERCENT
16  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;        **DECLARATION OF ROBERT ADAMS IN**
17  ROBERT ADAMS; PRK ARMS, INC.; and    **SUPPORT OF MOTION FOR**
    JEFFREY MULLEN,                      **PRELIMINARY INJUNCTION**
18
                   Plaintiffs,           Hearing Date:  January 29, 2015
19                                        Hearing Time: 2:00 p.m.
              v.                          Judge:   Hon. Troy L. Nunley
20                                        Courtroom 2, 15th Floor
    KAMALA D. HARRIS, in her official capacity   Action Filed: Nov. 10, 2014
21  as Attorney General of California; and
    STEPHEN J. LINDLEY, in his official capacity
22  as Chief of the California Department of Justice
    Bureau of Firearms,
23
                   Defendants.
24

25

26

27

28

---

DECL. OF ROBERT ADAMS ISO MOTION FOR PRELIMINARY INJUNCTION

**ER 36**

1    I, Robert Adams, declare:

2       1.      I have personal knowledge of the matters set forth in this declaration, and would be

3    able to testify competently to these facts if called as a witness.

4       2.      I am the owner of Sacramento Black Rifle, a firearms dealership in Rocklin,

5    California.  Sacramento Black Rifle is listed as a firearms dealer in the California Department of

6    Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the

7    dealership.

8       3.      Penal Code section 26820 hinders my business because we cannot advertise what

9    the dealership offers for sale on my windows or on banners or signage visible from outside on our

10   premises.  Advertising is one of my largest monthly expenditures; as a firearms dealer that may

11   lawfully sell handguns, not being able to effectively communicate, on-site, the products we sell is

12   detrimental to my business.  But for Section 26820, we would display truthful, nonmisleading

13   material advertising the sale of handguns at the dealership.

14      I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct.  Executed November _13_, 2014 in California.

16

17   

18                          ROBERT ADAMS

19

20

21

22

23

24

25

26

27

28

**ER 37**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904

5

6  EUGENE VOLOKH (SBN 194464)
   UCLA School of Law
7  405 Hilgard Ave.
   Los Angeles, CA  90095
8  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
   volokh@law.ucla.edu
9
   Attorneys for Plaintiffs
10

11           **UNITED STATES DISTRICT COURT**

12           **EASTERN DISTRICT OF CALIFORNIA**

13

14

15  TRACY RIFLE AND PISTOL LLC;        Case No.:  2:14-cv-02626-TLN-DAD
    MICHAEL BARYLA; TEN PERCENT
16  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;      **DECLARATION OF DEAN ROWDEN IN**
17  ROBERT ADAMS; PRK ARMS, INC.; and  **SUPPORT OF MOTION FOR**
    JEFFREY MULLEN,                    **PRELIMINARY INJUNCTION**
18
              Plaintiffs,              Hearing Date:  January 29, 2015
19                                     Hearing Time: 2:00 p.m.
          v.                           Judge:   Hon. Troy L. Nunley
20                                     Courtroom 2, 15th Floor
    KAMALA D. HARRIS, in her official capacity   Action Filed: Nov. 10, 2014
21  as Attorney General of California; and
    STEPHEN J. LINDLEY, in his official capacity
22  as Chief of the California Department of Justice
    Bureau of Firearms,
23
              Defendants.
24

25

26

27

28

---

**ER 38**

I, Dean Rowden, declare:

1.    I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.    I am the Chief Financial Officer of Ten Percent Firearms.

3.    I was working at the dealership when the DOJ Bureau of Firearms inspected Ten Percent Firearms in February 2010.  At the time of the inspection, there was a 3-foot by 2-foot three-dimensional metal sign shaped like a revolver, hung approximately 9 feet off the ground on a post in the dealership's parking lot.

4.    Bob Berthold, the DOJ inspector, informed me that the sign was a violation of the penal code and that the business could be shut down because of it.  Mr. Berthold also said that he would not cite the dealership for the violation if we removed the sign before he completed the inspection, so I directed one of our employees to remove the sign.  Even though we promptly removed the sign, the Mr. Berthold cited us for violating the handgun advertising ban.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed November //, 2014 in California.

DEAN ROWDEN

ER 39

1    BENBROOK LAW GROUP, PC
     BRADLEY A. BENBROOK (SBN 177786)
2    STEPHEN M. DUVERNAY (SBN 250957)
     400 Capitol Mall, Suite 1610
3    Sacramento, CA  95814
     Telephone: (916) 447-4900
4    Facsimile:  (916) 447-4904

5

6    EUGENE VOLOKH (SBN 194464)
     UCLA School of Law
     405 Hilgard Ave.
7    Los Angeles, CA  90095
     Telephone: (310) 206-3926
8    Facsimile: (310) 206-7010
     volokh@law.ucla.edu
9

10    Attorneys for Plaintiffs

11               **UNITED STATES DISTRICT COURT**

12               **EASTERN DISTRICT OF CALIFORNIA**

13

14

15    TRACY RIFLE AND PISTOL LLC;
     MICHAEL BARYLA; TEN PERCENT
16    FIREARMS; WESLEY MORRIS;
     SACRAMENTO BLACK RIFLE, INC.;
17    ROBERT ADAMS; PRK ARMS, INC.; and
     JEFFREY MULLEN,

18               Plaintiffs,

19        v.

20    KAMALA D. HARRIS, in her official capacity
     as Attorney General of California; and
21    STEPHEN J. LINDLEY, in his official capacity
     as Chief of the California Department of Justice
22    Bureau of Firearms,

23               Defendants.

Case No.:  2:14-cv-02626-TLN-DAD

**DECLARATION OF WESLEY MORRIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date:  January 29, 2015
Hearing Time: 2:00 p.m.
Judge:   Hon. Troy L. Nunley
Courtroom 2, 15th Floor
Action Filed: Nov. 10, 2014

24

25

26

27

28

**ER 40**

I, Wesley Morris, declare:

1.     I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.     I am an owner of Ten Percent Firearms, a firearms dealership in Taft, California. Ten Percent Firearms is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership.

3.     Dean Rowden and I founded Ten Percent Firearms in 2005 in a town that needed a firearms store. The store is a family business that takes pride in providing excellent customer service to the citizens of Taft, and through our website, all of California. Ten Percent Firearms has always sought to provide the customer what they want and we fight to be on the cutting edge of product lines and availability.

4.     On or about February 23, 2010, the DOJ Bureau of Firearms inspected Ten Percent Firearms. Displayed in the dealership's parking lot was a metal sign shaped like a revolver. The DOJ inspector informed the dealership that the sign violated the handgun advertising restriction, and that Ten Percent Firearms could be "shut down" for it. One of our employees immediately removed the sign while the inspector was still on the premises. Nevertheless, the Bureau of Firearms issued a "Notification of Inspection Findings" citing me and the dealership for violating the handgun advertising ban. A picture of the sign is attached as Exhibit 1 and a copy of the Notification is attached as Exhibit 2.

5.     By requiring Ten Percent Firearms to remove the sign, our First Amendment rights have been directly infringed by the enforcement of the handgun advertising ban, and our speech continues to be chilled by the statute. But for Section 26820, we would display additional truthful, nonmisleading material advertising the sale of handguns at the dealership.

6.     The essence of providing this service to our community is we must be able to advertise and advertise effectively. We cannot openly advertise our diverse line of handguns along one of the busiest traffic corridors in the west side of the county because of the restrictive prohibition of openly advertising handguns found in the California Penal Code. This obviously

ER 41

harms our ability to attract customers.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed November 11, 2014 in California.

_____
WESLEY MORRIS

**ER 42**

EXHIBIT 1



EXHIBIT 2

**ER 45**



**Department of Justice**
**Bureau of Firearms**
P.O. Box 160487   Sacramento, CA   95816-0487
Telephone: (916) 263-4887   Fax: (916) 274-5992

## FIREARMS DEALER NOTIFICATION OF INSPECTION FINDINGS

| Business Name: TEN PERCENT FIREARMS | City: TAFT | CC: 15 | Field Representative: BOB BERTHOLD | Date: FEB 23 2010 |
|---|---|---|---|---|
| Licensee(s): WESLEY MORRIS | CFD#: 2-1064 | Inspection# 2 Follow-up: ___ | Contact Person(s): WESLEY MORRIS /BECKY SHARP | Follow-up Required: YES |

☐ NO VIOLATIONS WERE REVEALED AT INSPECTION - NO FURTHER ACTION IS NECESSARY BY THE FIREARMS DEALERSHIP

☒ YOU ARE HEREBY NOTIFIED OF THE FOLLOWING VIOLATION(S) AND ACTION NECESSARY TO COMPLY WITH STATE LAW(S):

*THIS IS A WARNING. Violation(s) of California Penal Code sections have been revealed. This notification is issued to you in an effort to secure your cooperation in future compliance and to ensure public safety. The Department of Justice Bureau of Firearms believes that a firearms dealer will comply with these laws when notified of the importance of strict compliance. FUTURE FAILURE OF COMPLIANCE MAY RESULT IN ADMINISTRATIVE AND/OR CRIMINAL ACTION.*

| VIOLATION (PC Section) | SUMMARY OF VIOLATION | CORRECTIVE ACTION TO BE TAKEN | DATE TO BE COMPLETED |
|---|---|---|---|
| | FYI. PLACARD OF REVOLVER WAS DISPLAYED WHEN INSPECTION | | |
| | BEGAN. TAKEN DOWN DURING INSPECTION. PEN 12071(B)(14). | | |
| | HANDGUN OR AD CANNOT BE DISPLAYED/VIEW FROM OUTSIDE. | | |
| Redacted | | | |

COMMENTS: +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

ALL VIOLATIONS NOTED ABOVE WERE DISCUSSED. I HAVE RECEIVED A COPY OF THIS REPORT AND WILL TAKE STEPS TO COMPLY WITH THE ABOVE PENAL CODE SECTIONS WITHIN 30 DAYS UNLESS OTHERWISE INDICATED.

| LICENSEE/MGR/EMPLOYEE: _____ (SIGNATURE) | 2-23-10 (DATE) | INSPECTED BY: _____ (DEPARTMENT OF JUSTICE FIELD REPRESENTATIVE) | 02/24/10 (DATE) |

BOF 08-022 (Rev 5/2008)

DISTRIBUTION: ORIGINAL-Department of Justice   YELLOW-Firearms Dealership

OSP 08 108368

**ER 46**

1 BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
2 STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
3 Sacramento, CA  95814
Telephone: (916) 447-4900
4 Facsimile:  (916) 447-4904

5

EUGENE VOLOKH (SBN 194464)
6 UCLA School of Law
405 Hilgard Ave.
7 Los Angeles, CA  90095
Telephone: (310) 206-3926
8 Facsimile: (310) 206-7010
volokh@law.ucla.edu
9

Attorneys for Plaintiffs
10

11                 **UNITED STATES DISTRICT COURT**

12                 **EASTERN DISTRICT OF CALIFORNIA**

13

14

15 TRACY RIFLE AND PISTOL LLC;          Case No.:  2:14-cv-02626-TLN-DAD
MICHAEL BARYLA; TEN PERCENT
16 FIREARMS; WESLEY MORRIS;
SACRAMENTO BLACK RIFLE, INC.;        **DECLARATION OF MICHAEL BARYLA**
17 ROBERT ADAMS; PRK ARMS, INC.; and   **IN SUPPORT OF MOTION FOR**
JEFFREY MULLEN,                      **PRELIMINARY INJUNCTION**
18
                 Plaintiffs,          Hearing Date:  January 29, 2015
19                                      Hearing Time: 2:00 p.m.
          v.                          Judge:   Hon. Troy L. Nunley
20                                      Courtroom 2, 15th Floor
KAMALA D. HARRIS, in her official capacity   Action Filed: Nov. 10, 2014
21 as Attorney General of California; and
STEPHEN J. LINDLEY, in his official capacity
22 as Chief of the California Department of Justice
Bureau of Firearms,
23
                 Defendants.
24

25

26

27

28

---

**ER 47**

I, Michael Baryla, declare:

1.      I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.      I am the proprietor of Tracy Rifle and Pistol ("Tracy Rifle"), a firearms dealership in Tracy, California.  Tracy Rifle is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am the individual licensee associated with the dealership.

3.      I started Tracy Rifle with the goal of becoming the preeminent firearms dealer in the Central Valley.  I am proud of the products and services Tracy Rifle provides.  Access to firearms, specifically handguns, is a constitutionally protected right, and advertising is a key element to any successful business, including mine.  The ban on handgun advertising not only hinders licensed firearms dealers from conducting legal business, but also infringes our First Amendment rights.  I believe this law is a clear violation of two principles enumerated in the Bill of Rights and should be struck down immediately.

4.      On September 12, 2014, the DOJ Bureau of Firearms inspected Tracy Rifle.  At the time of the inspection, the building's exterior windows were covered with large vinyl decals depicting four firearms—three handguns and a rifle.  The handguns depicted are a Nighthawk Customs GRP Recon .45 ACP, a Smith and Wesson 642 .38 Special, and a Glock 42 .380 ACP.  The rifle is a Larue Tactical PredatOBR 5.56.  As of the date of the inspection, each of these firearms could be lawfully purchased in California, and Tracy Rifle regularly carries each of the four guns depicted in the windows.  A picture depicting the exterior of the store as it appeared on the date of the inspection is attached as Exhibit 1.

5.      The Bureau of Firearms issued a "Notification of Inspection Findings" citing the dealership and me for violating Section 26820 because of the handgun decals, and requiring us to remove the handgun decals by February 11, 2015.  A copy of the Notification is attached as Exhibit 2.

6.      If Section 26820 is not enjoined, I am forced to choose between sacrificing my First Amendment rights or losing my property and livelihood, since the DOJ may revoke Tracy Rifle's

**ER 48**

1   dealer's license for unremedied violations of the Penal Code.  By demanding Tracy Rifle to

2   remove the sign, our First Amendment rights have been directly infringed by the enforcement of

3   the handgun advertising ban, and our speech continues to be chilled by the statute.  But for Section

4   26820, I would continue to display the decals and would display additional truthful, nonmisleading

5   material advertising the sale of handguns at the dealership.

6           I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.  Executed November 13 , 2014 in California.

8
9                                    MICHAEL BARYLA
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ER 49

EXHIBIT 1



ER 51



**ER 52**

EXHIBIT 2

**ER 53**



**State of California**
**Bureau of Firearms**

P.O. Box 160487 • Sacramento, CA • 95816-0487
Telephone: (916) 227-7527 • Fax (916) 227-7480

## FIREARMS DEALER NOTIFICATION OF INSPECTION FINDINGS

| Business Name: Tracy Rifle + Pistol, LLC | City: Tracy | County Code: 39 | Field Representative: B. Berthold / R. Lewis | Date: 9/12/14 |
|---|---|---|---|---|
| License(s): Michael Baryla | CFD No: 214164 | Inspection No: 1 | Contact Person(s): Michael Baryla | Follow up Recommended: 2/11/15 |

☐ **NO VIOLATIONS WERE REVEALED AT INSPECTION - NO FURTHER ACTION IS NECESSARY BY THE FIREARMS DEALERSHIP**

☒ **YOU ARE HEREBY NOTIFIED OF THE FOLLOWING VIOLATION(S) AND ACTION NECESSARY TO COMPLY WITH STATE LAW(S)**

THIS IS A WARNING. Violation(s) of California Penal Code sections are summarized below. This notification is issued to you in an effort to secure your cooperation in future compliance and to ensure public safety. The Department of Justice Bureau of Firearms believes that a firearms dealer will comply with these laws when notified of the importance of strict compliance. FUTURE FAILURE OF COMPLIANCE MAY RESULT IN ADMINISTRATIVE AND/OR CRIMINAL ACTION.

| VIOLATION Penal Code Section | SUMMARY OF VIOLATION | CORRECTIVE ACTION TO BE TAKEN | DATE TO BE COMPLETED |
|---|---|---|---|
| Redacted | | | / / |
| 26820 | Pistol advertisements on windows | Remove | 2/11/15 |
| Redacted | | | / / |

COMMENTS:

ALL VIOLATIONS NOTED ABOVE WERE DISCUSSED. I HAVE RECEIVED A COPY OF THIS REPORT AND WILL TAKE STEPS TO COMPLY WITH THE ABOVE PENAL CODE SECTIONS WITHIN 30 DAYS UNLESS OTHERWISE INDICATED.

LICENSEE/MGR/EMPLOYEE: _____ (SIGNATURE) _____ 9/12/14 (DATE)  INSPECTED BY: Rene Lewis (DEPARTMENT OF JUSTICE FIELD REPRESENTATIVE) 9/12/14 (DATE)

DISTRIBUTION: ORIGINAL - Department of Justice   YELLOW - Firearms Dealership
BOF 08-021 (Rev. 04/2012)



**ER 54**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904
   brad@benbrooklawgroup.com
5  steve@benbrooklawgroup.com

6
   EUGENE VOLOKH (SBN 194464)*
7  UCLA School of Law
   405 Hilgard Ave.
8  Los Angeles, CA  90095
   Telephone: (310) 206-3926
9  Facsimile: (310) 206-7010
   volokh@law.ucla.edu
10 *Application for admission to be submitted

11 Attorneys for Plaintiffs

12

13

14                 **UNITED STATES DISTRICT COURT**

15                 **EASTERN DISTRICT OF CALIFORNIA**

16

17
   TRACY RIFLE AND PISTOL LLC;          Case No.:
18 MICHAEL BARYLA; TEN PERCENT
   FIREARMS; WESLEY MORRIS;
19 SACRAMENTO BLACK RIFLE, INC.;        **COMPLAINT FOR DECLARATORY,**
   ROBERT ADAMS; PRK ARMS, INC.; and    **INJUNCTIVE, OR OTHER RELIEF**
20 JEFFREY MULLEN,

21                 Plaintiffs,

22        v.

23 KAMALA D. HARRIS, in her official capacity
   as Attorney General of California; and
24 STEPHEN J. LINDLEY, in his official capacity
   as Chief of the California Department of Justice
25 Bureau of Firearms,

26                 Defendants.

27

28

**ER 55**

1    Plaintiffs Tracy Rifle and Pistol LLC, Michael Baryla, Ten Percent Firearms, Wesley

2  Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms, Inc., and Jeffrey Mullen

3  complain of Defendants and allege:

4                                         **INTRODUCTION**

5    1.    Plaintiffs bring this suit to challenge the constitutionality of California Penal Code

6  section 26820, which prohibits firearms dealers from displaying handgun advertisements that are

7  visible from the outside of their place of business.

8    2.    The sale of handguns is not only legal—it is constitutionally protected by the

9  Second Amendment.  The First Amendment protects truthful, nonmisleading commercial speech

10  promoting lawful products or services, but especially when the products or services are themselves

11  protected by other constitutional rights.  Even if California believes that buying a handgun is a bad

12  decision, "the 'fear that people would make bad decisions if given truthful information' cannot

13  justify content-based burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. ___, 131 S. Ct.

14  2653, 2670-71 (2011) (citation omitted).  "The choice 'between the dangers of suppressing

15  information, and the dangers of its misuse if it is freely available' is one that 'the First Amendment

16  makes for us.'"  *Id.* at 2671 (quoting *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer

17  Council, Inc.*, 425 U.S. 748, 770 (1976)).  And, "[i]f the First Amendment means anything, it

18  means that regulating speech must be a last—not first—resort."  *Thompson v. W. States Med. Ctr.*,

19  535 U.S. 357, 373 (2002).

20    3.    Section 26820 imposes a content- and speaker-based burden on protected

21  expression that is, in practice, viewpoint-discriminatory, and imposes an intolerable burden on the

22  right of firearms dealers to advertise accurate information about the sale of handguns.  So long as

23  responsible, law-abiding adults may purchase handguns in California—a right secured by the

24  Second Amendment—the First Amendment prevents the State from enforcing Section 26820's ban

25  on on-site handgun advertising.

26    4.    Because Section 26820 violates the First Amendment, Plaintiffs seek declaratory

27  and injunctive relief to invalidate the statute and enjoin its enforcement by the California

28  Department of Justice.

**ER 56**

1    **JURISDICTION AND VENUE**

2        5.      This case raises questions under the First Amendment and 42 U.S.C. § 1983 and

3    this Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.

4        6.      Venue is proper under 28 U.S.C. § 1391(b).  Assignment to the Sacramento

5    division is proper pursuant to Local Rule 120(d) because a substantial portion of the events giving

6    rise to this action occurred in Sacramento and San Joaquin counties.

7        **THE PARTIES**

8        7.      Plaintiff Tracy Rifle and Pistol LLC ("Tracy Rifle") is a California limited liability

9    company that operates a firearms dealership and shooting range in Tracy, California.  Tracy Rifle

10   is listed as a licensed firearms dealership in the California Department of Justice's ("DOJ")

11   Centralized List of Firearms Dealers, and is licensed by San Joaquin County to sell firearms at

12   retail.

13       8.      Plaintiff Michael Baryla is a California resident.  He is the managing member of

14   Tracy Rifle, proprietor of the business, and the individual licensee associated with the dealership.

15       9.      Plaintiff Ten Percent Firearms is a California corporation that operates a firearms

16   dealership in Taft, California.  Ten Percent Firearms is listed as a firearms dealer in the DOJ's

17   Centralized List of Firearms Dealers.

18       10.     Plaintiff Wesley Morris is a California resident, an owner of Ten Percent Firearms,

19   and an individual licensee associated with the dealership.

20       11.     Plaintiff Sacramento Black Rifle, Inc. is a California corporation that operates a

21   firearms dealership in Rocklin, California.  Sacramento Black Rifle is listed as a licensed firearms

22   dealership in the DOJ's Centralized List of Firearms Dealers.

23       12.     Plaintiff Robert Adams is a California resident, the owner of Sacramento Black

24   Rifle, and the individual licensee associated with the dealership.

25       13.     Plaintiff PRK Arms, Inc. is a California corporation that operates firearms

26   dealerships in Fresno, Visalia, and Turlock California.  PRK Arms is listed as a licensed firearms

27   dealership in the DOJ's Centralized List of Firearms Dealers.

28   ///

**ER 57**

14.     Plaintiff Jeffrey Mullen is a California resident, the owner of PRK Arms, and the individual licensee associated with the dealership.

15.     Defendant Kamala Harris is the Attorney General of the State of California.  The Attorney General is the chief law enforcement officer of the state, and it is her duty to ensure that California's laws are uniformly and adequately enforced.  The Attorney General is the head of the DOJ.  The DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, ownership, and transfer of firearms, including the licensing and regulation of firearms dealers.  Attorney General Harris is sued in her official capacity.  The Attorney General maintains an office in Sacramento.

16.     Defendant Stephen J. Lindley is the Chief of the DOJ Bureau of Firearms.  Upon information and belief, Lindley reports to Harris and is responsible for overseeing the licensing and regulation of firearms dealers.  He is sued in his official capacity.  The Bureau of Firearms maintains an office in Sacramento.

## GENERAL ALLEGATIONS

17.     The ability to obtain a handgun is central to a citizen's ability to exercise the core guarantee secured by the Second Amendment: "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *see id.* at 628 (handguns are the "class of 'arms'" "overwhelmingly chosen by American society for [the] lawful purpose [of self-defense]"); *id.* at 628-29 (handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family.").

18.     The First Amendment protects the dissemination of truthful, nonmisleading commercial information about lawful products—including handguns, which may lawfully be purchased from retail firearms dealers in California.  *See Edenfield v. Fane*, 507 U.S. 761, 765 (1993).  Plaintiff firearms dealers therefore have a constitutionally protected interest in conveying truthful commercial information about handguns to the public, and the public has a corresponding interest in receiving that information.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 564 (2001).  And like all retailers, firearms dealers have a particular interest in on-site advertising that communicates to passersby the products and services they offer.  *Id.* at 565.

ER 58

19.     But California law prevents firearms dealers from advertising even the most basic commercial information—"Handguns for Sale"—at their place of business.  Penal Code section 26820, which was enacted in 1923, prohibits firearms dealers from displaying a "handgun or imitation handgun, or [a] placard advertising the sale or other transfer thereof" "in any part of the premises where it can readily be seen from the outside."[1]

20.     Section 26820's ban violates the First Amendment in multiple respects.  For one thing, it prohibits firearms dealers from disseminating truthful, nonmisleading commercial information about a lawful, constitutionally protected product.

21.     For another, the restriction is content-based.  The law applies only to handguns, and does not apply to other firearms such as rifles or shotguns, and no separate California law imposes a similar restriction on advertising the sale of rifles or shotguns.  Even if California believes that buying a handgun is a bad decision, "the 'fear that people would make bad decisions if given truthful information' cannot justify content-based burdens on speech."  *Sorrell*, 131 S. Ct. at 2670-71 (citation omitted).  The Supreme Court has "rejected the notion that the Government has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information."  *Thompson*, 535 U.S. at 374.

22.     Furthermore, Section 26820 engages in speaker-based discrimination by singling out firearms dealers.  *See Sorrell*, 131 S. Ct. at 2663, 2666.  Thus, for example, a dealer is prevented from displaying advertisements that feature handguns in a campaign to promote responsible self-defense and public safety.  But an anti-gun group would remain free under Section 26820 to use similar imagery to picket in front of that same dealer, encouraging people not to purchase handguns or warning of the dangers of gun violence (indeed, the First Amendment protects such speech as well).  So, too, the statute operates in a way that is viewpoint-discriminatory: it is designed to suppress the purchase and sale of handguns by eliminating truthful

---

[1]     In addition to Section 26820, many localities, which key their firearm licensing regulations to the State's, also impose similar on-site handgun advertising prohibitions.  *See, e.g.*, San Joaquin Cnty. Code of Ordinances § 7-1251(d) ("No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be readily seen from the outside.").

**ER 59**

commercial speech notifying potential customers that handguns are available for sale.

23.   This sort of market manipulation, however, is unconstitutional.  A state "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements . . . ."  *Sorrell*, 131 S. Ct. at 2670.

24.   Plaintiffs are retail firearms dealers who wish to display truthful, nonmisleading material advertising the sale of handguns at their places of business.  Section 26820 prevents them from doing so, and a dealer's license is subject to forfeiture for violating the handgun advertising restriction.  Cal. Penal Code §§ 26800, 26715(b); Cal. Admin. Code tit. 11, § 4024 (DOJ may remove dealer from the Centralized List for violating state firearms laws).  The DOJ's enforcement of the advertising ban has infringed Plaintiffs' First Amendment rights, and the threat of further enforcement chills the protected speech of firearms dealers throughout the State.

25.   On September 12, 2014, the DOJ Bureau of Firearms inspected Tracy Rifle.  At the time of the inspection, the building's exterior windows were covered with large vinyl decals depicting four firearms—three handguns and a rifle.[2]  As of the date of the inspection, each of these firearms could be lawfully purchased in California, and Tracy Rifle regularly carries each of the four guns depicted in the windows.

26.   The Bureau of Firearms issued a "Notification of Inspection Findings" citing Plaintiffs Tracy Rifle and Baryla for violating Section 26820 because of the handgun decals, and requiring Plaintiffs to take corrective action by February 11, 2015.  The DOJ may revoke Tracy Rifle's dealer's license for unremedied violations of the Penal Code.  Penal Code §§ 26800, 26715(b); Cal. Admin. Code tit. 11, § 4024.

27.   But for Section 26820, Plaintiffs Tracy Rifle and Baryla would continue to display the decals and would display additional truthful, nonmisleading material advertising the sale of handguns.

28.   On or about February 23, 2010, the DOJ Bureau of Firearms inspected Ten Percent Firearms.  Displayed in the dealership's parking lot was a metal sign shaped like a revolver.  The

---

[2]   The handguns depicted are a Nighthawk Customs GRP Recon .45 ACP, a Smith and Wesson 642 .38 Special, and a Glock 42 .380 ACP.  The rifle is a Larue Tactical PredatOBR 5.56.

ER 60

1  DOJ inspector informed the dealership that the sign violated the handgun advertising restriction,

2  and Ten Percent Firearms immediately removed the sign.  The Bureau of Firearms issued a

3  "Notification of Inspection Findings" citing Plaintiffs Ten Percent Firearms and Morris for

4  violating the handgun advertising ban.[3]

5      29.     But for Section 26820, Plaintiffs Ten Percent Firearms and Morris would display

6  truthful, nonmisleading material advertising the sale of handguns.

7      30.     Beyond direct enforcement of Section 26820, the threat of enforcement chills

8  protected speech.  Plaintiffs Sacramento Black Rifle and PRK Arms desire to display truthful,

9  nonmisleading on-site handgun advertising that is visible from the outside of their dealerships, and

10 would do so, but for Section 26820 and the threat of forfeiting their licenses to sell firearms.

11     31.     An actual and judicially cognizable controversy exists between Plaintiffs and

12 Defendants regarding whether Section 26820 violates the First Amendment.  Plaintiffs desire a

13 judicial declaration of their rights and Defendants' duties regarding the constitutionality and

14 continued enforcement of the statute.

15     32.     Defendants have enforced Section 26820 to the detriment of Plaintiffs.  If Section

16 26820 is not enjoined, Defendants will continue to enforce this unconstitutional law against

17 Plaintiffs, who will be forced to choose between sacrificing their First Amendment rights

18 (removing the advertisements or not engaging in protected speech) and losing their property and

19 livelihood (forfeiting their dealer's license for noncompliance).

20 **CLAIMS FOR RELIEF**

21 **CLAIM ONE:  VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)**

22     33.     Plaintiffs incorporate here by reference paragraphs 1 through 32, *supra*, as if fully

23 set forth herein.

24     34.     Defendants, acting under color of state law, are enforcing Section 26820, which

25 deprives Plaintiffs of rights secured by the First Amendment to the United States Constitution in

26 violation of 42 U.S.C. § 1983.

27 
───────────────
28 [3]     Ten Percent Firearms and Morris were cited for violating former Penal Code section
   12071(b)(4), which has since been renumbered as Section 26820.

ER 61

1    35.    Section 26820 violates the First Amendment, both on its face and as applied to

2  Plaintiffs.

3    36.    By prohibiting firearms dealers from displaying on-site handgun advertisements,

4  Section 26820 violates the right of firearms dealers to disseminate truthful, nonmisleading

5  commercial information about a lawful, constitutionally protected product.

6    37.    Furthermore, Section 26820 imposes a content- and speaker-based burden on

7  protected inspection, and it operates in a manner that is viewpoint-discriminatory.  The law is

8  therefore "presumptively invalid."  *Sorrell*, 131 S. Ct. at 2667 (quoting *R.A.V. v. St. Paul*, 505 U.S.

9  377, 382 (1992)); *see id.*, 131 S.Ct. at 2664.

10  **PRAYER FOR RELIEF**

11    Wherefore, Plaintiffs pray for judgment as follows:

12    1.    Plaintiffs respectfully request that this Court, pursuant to 28 U.S.C. § 2201,

13  construe Penal Code section 26820 and enter a declaratory judgment stating that it violates the

14  First Amendment.

15    2.    Plaintiffs respectfully request that this Court enter a preliminary and permanent

16  injunction enjoining enforcement or application of Penal Code section 26820.

17    3.    Plaintiffs respectfully request costs of suit, including reasonable attorneys' fees

18  under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may

19  be justly entitled.

20  Dated:  November 10, 2014                BENBROOK LAW GROUP, PC

21

22                                 By  /s/ *Bradley A. Benbrook*
                                        _____
23                                      BRADLEY A. BENBROOK
                                        Attorneys for Plaintiffs
24

25

26

27

28

ER 62

# U.S. District Court
## Eastern District of California - Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:14-cv-02626-TLN-DAD

Tracy Rifle and Pistol LLC, et al. v. Harris, et al.       Date Filed: 11/10/2014
Assigned to: District Judge Troy L. Nunley                 Jury Demand: None
Referred to: Magistrate Judge Dale A. Drozd               Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                           Jurisdiction: Federal Question

**Plaintiff**

**Tracy Rifle and Pistol LLC**            represented by   **Bradley A. Benbrook**
*a California Limited Liability Company*                    Benbrook Law Group
                                                          400 Capitol Mall, Suite 1610
                                                          Sacramento, CA 95814
                                                          916-447-4900
                                                          Fax: 916-447-4904
                                                          Email: brad@benbrooklawgroup.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Stephen M. Duvernay**
                                                          Benbrook Law Group
                                                          400 Capitol Mall
                                                          Suite 1610
                                                          Sacramento, CA 95814
                                                          916-447-4900
                                                          Email: steve@benbrooklawgroup.com
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Baryla**                       represented by   **Bradley A. Benbrook**
*Managing Member, Tracy Rifle and*                        (See above for address)
*Pistol LLC*                                              *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Stephen M. Duvernay**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ten Percent Firearms**                 represented by   **Bradley A. Benbrook**
*a California Corporation*                                (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Stephen M. Duvernay**

**ER 63**

**Plaintiff**

**Wesley Morris**                    represented by   **Bradley A. Benbrook**
*Owner, Ten Percent Firearms*                         (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen M. Duvernay**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sacramento Black Rifle, Inc.**     represented by   **Bradley A. Benbrook**
*a California Corporation*                            (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen M. Duvernay**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**PRK Arms, Inc.**                   represented by   **Bradley A. Benbrook**
*a California Corporation*                            (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen M. Duvernay**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrery Mullen**                  represented by   **Bradley A. Benbrook**
*Owner, PRK Arms, Inc.*                               (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen M. Duvernay**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Adams**                     represented by   **Bradley A. Benbrook**
*Owner, Sacramento Black Rifle, Inc.*                 (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen M. Duvernay**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Imbert & Smithers, Inc.**       represented by  **Bradley A. Benbrook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alex Rolsky**       represented by  **Bradley A. Benbrook**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kamala D. Harris**       represented by  **Emmanuelle S. Soichet**
*Attorney General, State of California*       California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
415-703-5974
Fax: 415-703-1234
Email: emmanuelle.soichet@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nelson Ryan Richards**
California Attorney General's Office
2550 Mariposa Mall
Room 5090
Fresno, CA 93721
559-477-1688
Fax: 559-445-5106
Email: nelson.richards@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stephen J. Lindley**       represented by  **Emmanuelle S. Soichet**
*Chief, California Department of Justice,*       (See above for address)
*Bureau of Firearms*       *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nelson Ryan Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ER 65**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/10/2014 | 1 | COMPLAINT against all defendants by Ten Percent Firearms, Michael Baryla, Tracy Rifle and Pistol LLC, Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Sacramento Black Rifle, Inc., Robert Adams. (Filing fee $400.00, receipt number 0972-5604824) (Attachments: # 1 Civil Cover Sheet) (Benbrook, Bradley) Modified on 11/10/2014 (Michel, G). (Entered: 11/10/2014) |
| 11/10/2014 | 2 | SUMMONS ISSUED as to *Kamala D. Harris, Stephen J. Lindley* with answer to complaint due within *21* days. Attorney *Bradley A. Benbrook* *Benbrook Law Group, PC* *400 Capitol Mall, Suite 1610* *Sacramento, CA 95814*. (Michel, G) (Entered: 11/10/2014) |
| 11/10/2014 | 3 | CIVIL NEW CASE DOCUMENTS ISSUED. (Attachments: # 1 Consent Form, # 2 VDRP) (Michel, G) (Entered: 11/10/2014) |
| 11/17/2014 | 4 | SUMMONS RETURNED EXECUTED: Kamala D. Harris, Stephen J. Lindley served on 11/10/2014. (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 5 | MOTION FOR PRELIMINARY INJUNCTION by all plaintiffs. Motion Hearing SET for 1/29/2015 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Memorandum of Points and Authorities) (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 6 | DECLARATION of Wesley Morris in support of 5 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 7 | DECLARATION of Jeffrey Mullen in support of 5 Motion for Preliminary Injunction. (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 8 | DECLARATION of Dean Rowden in support of 5 Motion for Preliminary Injunction. (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 9 | DECLARATION of Michael Baryla in support of 5 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 10 | DECLARATION of Robert Adams in support of 5 Motion for Preliminary Injunction. (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/17/2014 | 11 | PROPOSED ORDER re 5 Motion for Preliminary Injunction. (Benbrook, Bradley) Modified on 11/19/2014 (Michel, G). (Entered: 11/17/2014) |
| 11/24/2014 | 12 | DECLINE to PROCEED BEFORE US MAGISTRATE JUDGE by Robert Adams, Michael Baryla, Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC. (Attachments: # 1 Proof of Service)(Benbrook, Bradley) (Entered: 11/24/2014) |
| 12/01/2014 | 13 | ANSWER by Kamala D. Harris, Stephen J. Lindley. Attorney Richards, Nelson |

| | | Ryan added.(Richards, Nelson) (Entered: 12/01/2014) |
|---|---|---|
| 12/01/2014 | 14 | DECLINE to PROCEED BEFORE US MAGISTRATE JUDGE by Kamala D. Harris, Stephen J. Lindley. (Richards, Nelson) (Entered: 12/01/2014) |
| 01/08/2015 | 15 | STIPULATION and PROPOSED ORDER for Continuance of January 29, 2015 Hearing and Change to November 10, 2014 Order Requiring Joint Status Report by Kamala D. Harris, Stephen J. Lindley. (Richards, Nelson) (Entered: 01/08/2015) |
| 01/09/2015 | 16 | ORDER signed by District Judge Troy L. Nunley on 1/9/2015 ORDERING that the 1/29/2015 hearing on Plaintiffs' 5 motion for preliminary injunction is CONTINUED to 3/12/2015 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. Defendants' Response in Opposition will be due on or before 2/23/2015, and Plaintiffs' Reply Brief will be due on or before 3/4/2015. The Federal Rule of Civil Procedure 26(f) conference and Joint Status Report ordered by this Court on 11/10/2014 shall be postponed until 14 days after the hearing on Plaintiffs' motion for preliminary injunction. (Zignago, K.) (Entered: 01/09/2015) |
| 02/18/2015 | 17 | STIPULATION and PROPOSED ORDER for Joinder of Additional Plaintiffs by Robert Adams, Michael Baryla, Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC. (Attachments: # 1 Exhibit A, # 2 Proof of Service)(Benbrook, Bradley) (Entered: 02/18/2015) |
| 02/23/2015 | 18 | OPPOSITION by Kamala D. Harris, Stephen J. Lindley to 5 Motion for Preliminary Injunction. (Richards, Nelson) (Entered: 02/23/2015) |
| 02/23/2015 | 19 | DECLARATION of Nelson R. Richards in Opposition to 5 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit 1 - 1917 Cal. Stat. ch. 145, # 2 Exhibit 2 - Proceedings of 34th Annual Meeting of National Conference of Commissioners on Uniform State Laws, 47 Ann. Rep. A.B.A. 522 (1924), # 3 Exhibit 3 - Handbook of National Conference of Commissioners on Uniform State Laws (1924), # 4 Exhibit 4 - 1923 Cal. Stat. ch. 339, # 5 Exhibit 5 - Charles V. Imlay, The Uniform Firearms Act, 12 A.B.A. J. 767 (1926), # 6 Exhibit 6 - New Firearms Law Effective on August 7, S.F. Chron., 7/15/1923, # 7 Exhibit 7 - S. 4012, 67th Cong. (1922), # 8 Exhibit 8 - Committee on Law Enforcement's for a Better Enforcement of the Law, 8 A.B.A. J. 588 (1922), # 9 Exhibit 9 - Report of the California Crime Commission (1929), # 10 Exhibit 10 - Report of the Standing Committee on Uniform State Laws, Report of 49th Annual Meeting of the American Bar Association (1926), # 11 Exhibit 11 - Kamala D. Harris, Attorney General, Homicide in California, 2013 (2013(, # 12 Exhibit 12 - Kamala D. Harris, Attorney General, 2013 Firearms Used in the Commission of Crimes (2013), # 13 Exhibit 13 - Bureau of Justice Statistics, U.S. Department of Justice, Firearm Violence, 1993-2011 (2013), # 14 Exhibit 14 - California Department of Public Health's California Violent Death Reporting System User-Generated Report, Suicides 2005-2009, # 15 Exhibit 15 - John Henry Sloan et al., Handgun Regulations, Crime, Assaults, and Homicide A Tale of Two Cities, 318 New Eng. J. Med. 913 (1988), # 16 Exhibit 16 - Michael Siegel et al., The Relationship Between Gun Ownership and Firearm Homicide Rates in the United States, 1981-2010, 103 Am. J. Pub. Health 2098 (2013), # 17 Exhibit 17 - Peter Cummings et al., The Association Between the Purchase of a Handgun and Homicide or Suicide, 87 Am. J. Pub. Health 974 (1997), # 18 Exhibit 18 - Garen J. Wintemute et al., Mortality Among Recent Purchasers of Handguns, 341 New Eng. J. Med 1583 (1999), # 19 Exhibit 19 - K.M. Grassel et al., Mortality Among Recent |

| | | |
|---|---|---|
| | | Purchasers of Handguns, 341 New Eng. J. Med 1583 (1999), # 20 Exhibit 20 - Matthew Miller & David Hemenway, Guns and Suicide in the United States, 359 New Eng. J. Med. 898 (2008)) (Richards, Nelson) Modified on 2/25/2015 (Marciel, M) (Entered: 02/23/2015) |
| 02/25/2015 | 20 | ORDER regarding joinder of additional plaintiffs signed by District Judge Troy L. Nunley on 2/23/15. Imbert & Smithers, Inc., and Alex Rolsky may join this action as Plaintiffs pursuant to Federal Rule of Civil Procedure 20(a)(1). The joinder of Imbert & Smithers and Alex Rosky as Plaintiffs does not require modification of the hearing schedule on Plaintiffs' motion for preliminary injunction, which is set for hearing on 3/12/2015. Plaintiffs are directed to file an amended complaint within five days of this order. Upon the filing of the amended complaint, Imbert & Smithers, Inc., and Alex Rolsky will be joined in the pending Motion for Preliminary Injunction that Plaintiffs filed on 11/17/2014. Imbert & Smithers, Inc., and Alex Rolsky ADDED as plaintiffs to this action. (Kastilahn, A) (Entered: 02/25/2015) |
| 02/25/2015 | 21 | NOTICE of APPEARANCE by Emmanuelle S. Soichet on behalf of defendants Kamala D. Harris and Stephen J. Lindley. Attorney Soichet, Emmanuelle S. added. (Attachments: # 1 Proof of Service) (Soichet, Emmanuelle) Modified on 2/25/2015 (Marciel, M) (Entered: 02/25/2015) |
| 02/27/2015 | 22 | FIRST AMENDED COMPLAINT against All Defendants by Ten Percent Firearms, Robert Adams, Imbert & Smithers, Inc., Tracy Rifle and Pistol LLC, Michael Baryla, Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Sacramento Black Rifle, Inc., Alex Rolsky. Attorney Benbrook, Bradley A. added. (Attachments: # 1 Proof of Service)(Benbrook, Bradley) (Entered: 02/27/2015) |
| 03/02/2015 | 23 | UNOPPOSED REQUEST re Relief From Page Limitation Requirement for Reply ISO Motion for Preliminary Injunction by Robert Adams, Michael Baryla, Imbert & Smithers, Inc., Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Alex Rolsky, Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC. (Attachments: # 1 Proof of Service)(Benbrook, Bradley) Modified on 3/2/2015 (Kastilahn, A). (Entered: 03/02/2015) |
| 03/02/2015 | 24 | PROPOSED ORDER re Granting Plaintiff's Unopposed Request for Relief from Page Limitation Requirement for Reply ISO Motion for PI re 23 Proposed Order, by Robert Adams, Michael Baryla, Imbert & Smithers, Inc., Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Alex Rolsky, Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC. (Attachments: # 1 Proof of Service) (Benbrook, Bradley) (Entered: 03/02/2015) |
| 03/03/2015 | 25 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 3/3/2015 GRANTING Plaintiffs' unopposed request for relief from page limitation requirement (ECF No. 23 ). Accordingly, Plaintiffs' reply in support of their motion for preliminary injunction shall not exceed 15 pages. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 03/03/2015) |
| 03/04/2015 | 26 | REPLY by Robert Adams, Michael Baryla, Imbert & Smithers, Inc., Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Alex Rolsky, Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC re 5 Motion for Preliminary Injunction. (Attachments: # 1 Proof of Service)(Benbrook, Bradley) (Entered: 03/04/2015) |

| | | |
|---|---|---|
| 03/06/2015 | 27 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 3/6/2015: On the Court's own motion, Plaintiffs' Motion for Preliminary Injunction (ECF No. 5 ) is hereby SUBMITTED without oral argument. Accordingly, the hearing set for 3/12/2015 is VACATED. If the Court determines oral argument is necessary, it will be scheduled at a later date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 03/06/2015) |
| 03/10/2015 | 28 | NOTICE of CHANGE of ADDRESS by Nelson Ryan Richards. (Richards, Nelson) (Entered: 03/10/2015) |
| 03/10/2015 | 29 | ANSWER by Kamala D. Harris, Stephen J. Lindley.(Richards, Nelson) (Entered: 03/10/2015) |
| 03/26/2015 | 30 | STIPULATION and PROPOSED ORDER for Rule 26(f) Conference and Joint Status Report by Kamala D. Harris. (Soichet, Emmanuelle) (Entered: 03/26/2015) |
| 04/01/2015 | 31 | ORDER signed by District Judge Troy L. Nunley on 3/31/2015 ORDERING 30 The FRCP 26(f) conference and Joint Status Report ordered by this Court on 1/9/2015, shall be postponed until no more than 14 days after either a rescheduled hearing on Plaintiffs' motion for preliminary injunction, or the Court's resolution of Plaintiffs' motion without a hearing. (Reader, L) (Entered: 04/01/2015) |
| 07/16/2015 | 32 | ORDER denying 5 Motion for Preliminary Injunction signed by District Judge Troy L. Nunley on 7/15/15. (Kaminski, H) (Entered: 07/16/2015) |
| 07/27/2015 | 33 | NOTICE of INTERLOCUTORY APPEAL by Robert Adams, Michael Baryla, Imbert & Smithers, Inc., Wesley Morris, Jeffrey Mullen, PRK Arms, Inc., Alex Rolsky, Sacramento Black Rifle, Inc., Ten Percent Firearms, Tracy Rifle and Pistol LLC. (Filing fee $ 505, receipt number 0972-6004269) (Attachments: # 1 Exhibit A, # 2 Proof of Service)(Benbrook, Bradley) Modified on 7/28/2015 (Mena-Sanchez, L). (Entered: 07/27/2015) |
| 07/28/2015 | 34 | APPEAL PROCESSED to Ninth Circuit re 33 Notice of INTERLOCUTORY Appeal, filed by PRK Arms, Inc., Ten Percent Firearms, Alex Rolsky, Robert Adams, Imbert & Smithers, Inc., Tracy Rifle and Pistol LLC, Wesley Morris, Michael Baryla, Jeffrey Mullen, Sacramento Black Rifle, Inc.. Notice of Appeal filed *7/27/2015*, Complaint filed *11/10/2014* and Appealed Order / Judgment filed *7/16/2015*. ** *Fee Status: Paid on 7/27/2015 in the amount of $505.00* (Attachments: # 1 Appeal Information) (Mena-Sanchez, L) (Entered: 07/28/2015) |
| 07/29/2015 | 35 | JOINT STATUS REPORT by Plaintiffs. (Attachments: # 1 Proof of Service) (Benbrook, Bradley) Modified on 7/30/2015 (Mena-Sanchez, L). (Entered: 07/29/2015) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/07/2015 11:26:56 | | | |
| **PACER Login:** | Bbenbrook14:3914773:0 | **Client Code:** | CalGuns |
| **Description:** | Docket Report | **Search Criteria:** | 2:14-cv-02626-TLN-DAD |

| Billable Pages: | 7 | Cost: | 0.70 |
|---|---|---|---|

**ER 70**

| 9th Circuit Case Number(s) | 15-16501 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 08/24/2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Kelly McConnen

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)