No. 15-16501

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN
PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK
RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; JEFFREY
MULLEN; IMBERT & SMITHERS, INC.; and ALEX ROLSKY,
*Plaintiffs-Appellants,*

v.

KAMALA D. HARRIS, in her official capacity as Attorney General of
California; and STEPHEN J. LINDLEY, in his official capacity as Chief
of the California Department of Justice Bureau of Firearms,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
The Honorable Troy L. Nunley
Case 2:14-cv-02626-TLN-DAD

## APPELLANTS' REPLY BRIEF

Bradley A. Benbrook
Stephen M. Duvernay
Benbrook Law Group, PC
400 Capitol Mall, Suite 1610
Sacramento, CA 95814
(916) 447-4900

Eugene Volokh
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

# Table of Contents

Table of Contents......................................................... i

Table of Authorities ..................................................... ii

Argument .................................................................. 1

I.   Plaintiffs are highly likely to succeed on the merits of their First
     Amendment claim ..................................................... 1

     A.   Section 26820 impermissibly restricts speech because of
          a fear that the speech will persuade people....................1

     B.   Section 26820 impermissibly restricts commercial
          speech that is especially protected because such speech
          promotes products that are themselves constitutionally
          protected .....................................................5

     C.   Section 26820 rests on the sort of implausible
          "speculation or conjecture" that the Supreme Court has
          forbidden in commercial speech cases ..........................8

II.  The three other preliminary injunction factors likewise cut in
     Tracy Rifle's favor ................................................14

Conclusion................................................................21

# Table of Authorities

## Cases

*44 Liquormart, Inc. v Rhode Island*, 517 U.S. 484 (1996) ............... *passim*

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................................................................................. 15

*Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165 (9th Cir. 2015) ........................................................................ 17

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ......................................................................... 15

*Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012) ............ 19

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ................................... 6

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ........................ 5, 6

*Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977) ................................ 6

*Charles v. City of Los Angeles*, 697 F.3d 1146 (9th Cir. 2012) ............... 5, 6

*Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010) .................... 7, 8

*Dish Network Corp. v. FCC*, 653 F.3d 771 (9th Cir. 2011) ....................... 17

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. 7

*Edenfield v. Fane*, 507 U.S. 761 (1993) ...................................... 8, 10, 11, 12

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................... 16

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) .................................... 17

*Indep. Living Ctr. of So. Cal., Inc. v. Shewry*, 543 F.3d 1047
 (9th Cir. 2008) ........................................................................ 16

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ............ 15, 19

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) ...................... 18

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006) ............. 18

*Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215 (9th Cir.
 1987) ...................................................................................... 16

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) .................................... 12

*Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959 (9th Cir.
 2002) ................................................................... 15, 18, 19, 20

*Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011) ............................ 2, 3, 4

*Thompson v. Western States Medical Center*, 535 U.S. 357
 (2002) .................................................................................. 2, 3, 4, 12

*Valle Del Sol Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013) ... 16, 17, 18, 21

*Vivid Entm't, LLC v. Fielding*, 774 F.3d 566 (9th Cir. 2014) ................... 17

*W. States Med. Ctr. v. Shalala*, 238 F.3d 1090 (9th Cir. 2001) ............ 4, 12

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ............................ 15

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7
 (2008) .................................................................................. 14, 15, 17

**Statutes**

Cal. Penal Code § 26820 ................................................... *passim*

Cal. Penal Code §§ 26850-26860 ...................................................... 2

Cal. Penal Code §§ 31610-31670 ...................................................... 2

## Other Sources

Inst. of Medicine & Nat'l Research Council of Nat'l Academies,
  *Priorities for Research to Reduce the Threat of Firearm-*
  *Related Violence* (2013) ............................................................ 13

Nat'l Research Council of Nat'l Academies, *Firearms and*
  *Violence: A Critical Review* (2004) ............................................ 13

Pew Research Center, *Gun Homicide Rate Down 49% Since*
  *1993 Peak; Public Unaware*, May 17, 2013 .............................. 13

U.S. Dep't of Justice, Bureau of Justice Statistics, *Firearm*
  *Violence, 1993-2011* (2013) ...................................................... 13

## Argument

Enforcement of Cal. Penal Code § 26820 should be preliminarily enjoined. Plaintiffs are highly likely to succeed on the merits of their First Amendment claim. The violation of speakers' First Amendment rights has long been recognized as an irreparable harm. There is no hardship to the State in the State's having to comply with the First Amendment, and the State's argument that a preliminary injunction would increase crime or injury is based on highly implausible speculation. And protecting First Amendment rights is in the public interest.

## I.    Plaintiffs are highly likely to succeed on the merits of their First Amendment claim

### A.    Section 26820 impermissibly restricts speech because of a fear that the speech will persuade people

The State believes that handguns—a legal, constitutionally protected product—are bad for society. State Br. 6-8, 14, 17-18, 22-24. The State therefore seeks to restrict truthful, nonmisleading on-site signs urging people to buy handguns.

The State's primary worry is "not necessarily" about people who buy handguns out of "rage or despair." *Id.* at 23. Rather, its fear of "an emotion-driven purchase" is simply a fear of an "unconsidered purchase" or

an "uni[n]formed impulse purchase," *id.* at 23, though an "impulse purchase" that takes 10 days to complete.

Yet California law requires all handgun buyers to be informed about firearms safety and California firearms law—buyers must pass a written test on those subjects, Cal. Penal Code §§ 31610-31670—and also requires them to show that they can safely handle the firearm, *id.* §§ 26850-26860. The supposed lack of information thus simply refers to the alleged "impulse purchase[rs']" disagreement with the State's belief that buying handguns is a bad idea.

This is a classic example of the government restricting speech because of "the 'fear that people would make bad decisions if given truthful information,'" *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2670 (2011)—a fear that the Supreme Court has squarely held "cannot justify content-based burdens on speech," including commercial speech. *Id.* at 2670-71. Yet the State's brief never confronts this argument.

Tracy Rifle's brief extensively discusses *Sorrell*, *Thompson v. Western States Medical Center*, 535 U.S. 357 (2002), and *44 Liquormart, Inc. v Rhode Island*, 517 U.S. 484 (1996) (plurality), which hold that the government may not restrict commercial advertising based on a fear that it

would persuade viewers to make bad decisions. The State's discussion of those cases, which appears only on State Br. 30-31, does not actually respond to those holdings of *Sorrell*, *Thompson*, and *44 Liquormart*.

Instead, the State discusses only the separate conclusion in *Sorrell* that the law in that case was internally inconsistent, the separate conclusion in *Thompson* that the government could have used less restrictive means, and the separate conclusion in *44 Liquormart* that the law there was a complete ban on price advertising. The State's brief is written as if the "fear that people would make bad decisions if given truthful information" is a perfectly adequate justification for restricting speech, and as if the contrary decisions from the Supreme Court have never been handed down.

Of course, the government often wants to restrict the consumption of lawful products on the grounds that those products can lead to crime, suicide, or accidents. Alcohol is a classic example. Yet the Supreme Court has made clear that the government may not suppress alcohol advertisements based on a fear that they may lead people to buy more alcohol. *44 Liquormart*, 517 U.S. at 503 (plurality op.); *Sorrell*, 131 S. Ct. at 2671 (majority opinion quoting and endorsing this passage from

the *44 Liquormart* plurality); *Thompson*, 535 U.S. at 375 (likewise); *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1096 (9th Cir. 2001) (likewise), *aff'd sub nom. Thompson*. The same must be at least equally true for handguns.

The State argues (in its discussion of § 26820's underinclusiveness) that § 26820 does not "disfavor[]" "a particular speaker of viewpoint." State Br. 28. Yet of course § 26820 is all about disfavoring certain speakers (handgun dealers) and a particular viewpoint (that people should buy handguns). The State's brief does not hide the State's disapproval of handguns, and its desire to limit handgun sales prompted by handgun ads outside gun stores. State Br. 6-8, 14, 17-18, 22-24. But any such attempt to control legal behavior by restricting speech that persuades people to engage in the behavior is inconsistent with the Supreme Court's precedents in *Sorrell* and *Thompson*, with the Supreme Court's endorsement of the *44 Liquormart* plurality opinion, and with this Court's decision in *W. States Med. Ctr.*

**B. Section 26820 impermissibly restricts commercial speech that is especially protected because such speech promotes products that are themselves constitutionally protected**

Tracy Rifle's opening brief argued that speech promoting the sale of services or products that are themselves constitutionally protected— such as abortion, contraceptives, or guns—is especially constitutionally protected. Tracy Rifle Br. 6 n.1, 11. The State responds by claiming that "this Court and the Supreme Court" have held "that commercial speech related to a constitutionally protected right receives scrutiny no different than any other kind of commercial speech." State Br. 19 n.3 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67-68 (1983), and *Charles v. City of Los Angeles*, 697 F.3d 1146, 1152 (9th Cir. 2012)).

But while the Supreme Court in *Bolger* did note that ads for contraceptives are commercial speech "notwithstanding the fact that they contain discussions of important public issues," 463 U.S. at 67-68, it also expressly stressed that "advertising of contraceptives not only implicates "'substantial individual and societal interests'" in the free flow of commercial information, but also relates to *activity which is protected from unwarranted state interference.*" *Id.* at 69 (citation omitted and

emphasis added). *Bigelow v. Virginia*, 421 U.S. 809, 822 (1975), and *Carey v. Population Servs. Int'l*, 431 U.S. 678, 700-01 (1977), likewise stressed the constitutional protection of abortion and contraceptives in striking down bans on abortion and contraceptive advertisements. Tracy Rifle Br. 6 n.1, 11.

And though this Court noted in *Charles* that the First Amendment protection offered a television program "does not cloak all advertisements for the program with noncommercial status," 697 F.3d at 1152, Tracy Rifle does not argue that advertisements for handguns are "noncommercial" speech. The argument is simply that such commercial speech is even more clearly protected—given *Bolger*, *Carey*, and *Bigelow*—than commercial speech promoting products that are not constitutionally protected, such as alcohol or pharmaceuticals. Given that even ads for alcohol or pharmaceuticals may not be restricted on the grounds that they would persuade people to buy such constitutionally unprotected products, *see* Part I.A, ads for handguns likewise may not be restricted on such grounds.

Instead of recognizing that handgun ads are even more clearly protected than alcohol and pharmaceutical ads—or at the very least equal-

ly protected—the State tries to analogize handgun ads to ads for prostitution, citing this Court's decision in *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010). But the State ignores the limitations that this Court deliberately included in that opinion.

This Court's analysis in *Coyote Publishing* began by stressing "the degree of disfavor in which prostitution is held in our society, as reflected in law. In this respect, prostitution is sui generis. Forty-nine of the fifty states today prohibit all sales of sexual services." *Id.* at 600. "The social condemnation of prostitution, therefore, is vastly more widespread—and vastly more consistent—than in the case of other categories of 'vice' that courts have considered, such as alcohol, tobacco products, and gambling." *Id.* at 601.

Handguns are nearly the exact opposite of prostitution in this respect. Even before *District of Columbia v. Heller*, 554 U.S. 570 (2008), recognized a constitutional right to possess a handgun, fifty of the fifty states allowed sales of handguns (with only D.C. and the City of Chicago and some suburbs forbidding handguns). The California Attorney General may condemn handguns, but it is social toleration of handgun ownership that is widespread in the statutes of American states, not so-

cial condemnation. *Coyote Publishing*, and the "sui generis" activity involved in that case, is about as far from this case as one can get.

Likewise, in *Coyote Publishing* this Court stressed that the statute was justified by an "interest in limiting the commodification of sex," 598 F.3d at 602, and a "genuine objection to buying and selling [sex]," which was seen as sufficient to justify forbidding advertisements for such buying and selling, even if the actual transactions had been legalized, *id.* at 605-06. But this rationale does not apply to bans on handgun advertisements, either. Handguns are indeed commodities sold on the market, even if, like alcohol, they are commodities that some may abuse in ways that harm others.

## C. Section 26820 rests on the sort of implausible "speculation or conjecture" that the Supreme Court has forbidden in commercial speech cases

Even setting aside the prohibition on restricting commercial speech for fear that people would be persuaded by it, § 26820 unconstitutionally rests on "the sort of 'speculation or conjecture' that is an unacceptable means of demonstrating that a restriction on commercial speech directly advances the State's asserted interest." *44 Liquormart*, 517 U.S. at 507 (lead op.) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)).

Tracy Rifle's opening brief discussed this in detail. Tracy Rifle Br. 24-35. The district court took the same view. Dist. Ct. Op. 10-12, ER 14-16.

The state responds that this argument "gave insufficient deference to the Legislature's authority" "to craft a solution" to the threat posed "by impulse purchases of handguns." State Br. 21. But content-based speech restrictions, including commercial speech restrictions, should not be evaluated with "deference," when all that the State offers is the "speculation or conjecture" that the Supreme Court has condemned.

The State's theory appears to be the following. First, the restriction on Tracy Rifle's rights is supposedly "vanishingly small," State Br. 15, because Tracy Rifle remains free to advertise handguns "inside its store (so long as the ads are not visible from outside), in newspapers, on the internet, on social media, on billboards, on radio, on television, in mailers, or in any other conceivable fashion," *id*. Presumably what makes the restriction "vanishingly small" in the State's view is that Tracy Rifle can still reach consumers, and persuade them just as effectively to buy Tracy Rifle's handguns, even without using signs outside the store.

Yet, second, somehow this "vanishingly small" restriction, in the State's view, "directly advances" the government's interest in prevent-

ing crime and suicide. *Id.* at 25. The supposed mechanism behind this "direct[] advanc[ing]" is that some people who are passing by a store and seeing a "handguns for sale" sign would be tempted into "emotion-driven impulse purchases," *id.* at 22, in a way that people who see the other handgun ads would not be. And this "emotion" "driv[ing]" the "purchase" is, in the state's view "not necessarily . . . rage or despair" (an understandable concession, given the 10-day waiting period, Tracy Rifle Br. 27-28, 33), but rather anything that would lead to "an unconsidered purchase," State Br. 23—presumably acquisitiveness or aesthetics: something like "cool-looking handgun, I want to buy one." And those buyers would supposedly be unusually dangerous, more so than people who buy handguns in response to other ads, or than people who see a picture of a rifle or shotgun and a sign saying "Guns" and sensibly infer that there would be handguns there, too. State Br. 21-22.

This is precisely the sort of "speculation or conjecture" that the Supreme Court has rejected as a basis for commercial speech restrictions. In *Edenfield*, for instance, the government speculated that in-person solicitation by accountants would unduly pressure clients. Not enough, said the Supreme Court: "It is well established that '[t]he party seeking

to uphold a restriction on commercial speech carries the burden of justifying it.'" 507 U.S. at 770. "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 770-71. And the state in *Edenfield*, the Supreme Court held, "ha[d] not demonstrated that, as applied in the business context, the ban on CPA solicitation advances its asserted interests in any direct and material way"—even though such evidence was presumably available, because many states had not banned CPA solicitation (much as here many states have not banned handgun advertising). *Id.* at 771.

Likewise, in *44 Liquormart*, the government argued that a restriction on price advertising would reduce alcohol consumption—not a ridiculous theory, but still a speculative one. The plurality opinion rejected this: "[A]ny conclusion that elimination of the ban would significantly increase alcohol consumption would require us to engage in the sort of 'speculation or conjecture' that is an unacceptable means of demon-

strating that a restriction on commercial speech directly advances the State's asserted interest." 517 U.S. at 507 (lead op.).

In *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), the government argued that a restriction on advertising the alcohol percentage in beer would prevent "strength wars," in which some beer producers touted their higher alcohol content and thus led people to get more drunk. But the Court there too held that the government cannot rest on "speculation or conjecture," *id.* at 487, and ultimately held against the government because it "did not offer any convincing evidence that the labeling ban has inhibited strength wars," *id.* at 490.

This Court has taken the same view, for instance in *W. States Med. Ctr.*, 238 F.3d 1090 (2001), *aff'd sub nom. Thompson*. Though the government argued that a restriction on advertising compounded drugs "will keep the demand for particular compounded drugs artificially low, and thereby protect unwary consumers," this Court demanded that the government give real "evidence demonstrating that its restrictions would succeed in striking the balance it claims is a substantial interest." 238 F.3d at 1095. "The government cannot carry its burden by 'mere speculation or conjecture.'" *Id.* at 1094 (quoting *Edenfield*).

In all these cases, the Supreme Court and this Court did not defer to legislative hypotheses about how a speech restriction might indirectly promote a government interest. They required real evidence, of a sort that the State does not offer here.

Nothing in the State's general condemnation of handguns (condemnation that is of course hotly contested[1]) supports its theory that people

---

[1] For instance, "[a]lmost all national survey estimates indicate that defensive gun uses by victims are at least as common as offensive uses by criminals, with estimates of annual uses ranging from about 500,000 to more than 3 million . . ., in the context of about 300,000 violent crimes involving firearms in 2008." Inst. of Medicine & Nat'l Research Council of Nat'l Academies, *Priorities for Research to Reduce the Threat of Firearm-Related Violence* 15 (2013). Likewise, from 1993 to 2011 firearm-related homicides declined 39% and nonfatal firearms crimes declined 69% while the per-capita firearm count has roughly doubled from 1965 to 2009. U.S. Dep't of Justice, Bureau of Justice Statistics, *Firearm Violence, 1993-2011* (2013); Pew Research Center, *Gun Homicide Rate Down 49% Since 1993 Peak; Public Unaware*, May 17, 2013. In 2004, the National Research Council concluded that existing research and data on firearms ownership "do not credibly demonstrate a causal relationship between the ownership of firearms and the causes or prevention of criminal violence or suicide." Nat'l Research Council of Nat'l Academies, *Firearms and Violence: A Critical Review* 6 (2004).

Fortunately, this case does not require this Court to resolve these empirical disputes, which have divided criminologists for decades, just as the Supreme Court's First Amendment cases dealing with alcohol advertising did not require the Court to resolve criminological disputes related to whether alcohol should be restricted. The State does not offer any studies that deal with the effectiveness of restrictions on *handgun advertising*, which is the only restriction involved in this case. And in

who buy handguns after seeing handgun ads outside a store are some-how "a greater risk to public safety," State Br. 22, than people who buy them after seeing advertisements elsewhere. And nothing supports the counterintuitive view that a "vanishingly small" speech restriction nonetheless "materially advances" the State's interests.

## II. The three other preliminary injunction factors likewise cut in Tracy Rifle's favor

As the opening brief argued, the other preliminary injunction factors also cut in Tracy Rifle's favor. Tracy Rifle Br. 35-44. The State notes that a preliminary injunction "'does not follow from success on the mer-its as a matter of course.'" State Br. 13 (quoting *Winter v. Natural Re-sources Defense Council, Inc.*, 555 U.S. 7, 32 (2008)). But here Tracy Ri-fle is likely to succeed on the merits; it is suffering irreparable harm; the balance of equities tips in its favor; and an injunction would be in the public interest. Tracy Rifle Br. 35-44.

The district court erred in concluding the contrary as to the balance of equities and the public interest prong. In the process it "based its de-

---

any event, for the reasons given in this brief and in Tracy Rifle's open-ing brief, the First Amendment protects advertising for lawful handgun sales even if the State believes that handgun possession caused by the persuasive force of an advertisement poses a danger.

cision on an erroneous legal standard," *Klein v. City of San Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009), in ruling, based on speculation rather than real evidence, that a preliminary injunction vindicating Tracy Rifle's First Amendment rights would be unduly dangerous. *See infra* p. 19. And the district court both implicitly relied on an erroneous legal standard and abused its discretion by denying the injunction in a case where all four factors point in the direction of a grant. In such situations, where all the factors cut in the plaintiff's favor, this Court has repeatedly reversed district court's denials of preliminary injunctions. *See, e.g.*, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1139 (9th Cir. 2011); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009); *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005); *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 975 (9th Cir. 2002).

This case does not involve the special circumstances in *Winter*: the presence of "'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force,' which are 'essentially professional military judgments'"; the requisite "'great deference to the professional judgment of military authorities concerning

the relative importance of a particular military interest'"; and the "serious threat to national security" credibly posed by the injunction. 555 U.S. at 24, 32-33 (citations omitted). Instead, this case involves the First Amendment, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and upholding preliminary injunction against a restriction on commercial speech).

To be sure, even if the risk of irreparable injury were low, Tracy Rifle's very strong likelihood of success on the merits would counsel in favor of granting a preliminary injunction. "'[T]he required showing of harm varies inversely with the required showing of meritoriousness.'" *Indep. Living Ctr. of So. Cal., Inc. v. Shewry*, 543 F.3d 1047, 1049 (9th Cir. 2008) (quoting *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)). But here there is both a strong showing of irreparable injury, as noted in *Valle Del Sol* and *Elrod*, and a strong showing of likelihood of success on the merits.

Indeed, the State does not cite a single case in which this Court declined to preliminarily enjoin a statute or ordinance that likely violates

the First Amendment, and that therefore irreparably injures claimants by denying them their "First Amendment freedoms," *Valle Del Sol*, 709 F.3d at 828. Each of the cases the State cites, *Dish Network Corp. v. FCC*, 653 F.3d 771 (9th Cir. 2011), *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014), and *Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165 (9th Cir. 2015), refused to grant a preliminary injunction only after finding that the government actions in those cases likely did *not* violate the First Amendment.

And even *Am. Freedom Def. Initiative*, which stated in the alternative that the plaintiffs in that case "cannot satisfy *Winter*, even if they had shown a likelihood of success," stressed that the plaintiffs sought a "mandatory injunction" ordering King County to affirmatively place plaintiffs' ad on King County buses. 796 F.3d at 1173. Such a "mandatory injunction" is "particularly disfavored." *Id.* But Tracy Rifle seeks only a prohibitory injunction that forbids the enforcement of an unconstitutional statute. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1160 (9th Cir. 2010) (adopting Black's Law Dictionary definition, which defines "'prohibitory injunction' as an injunction that 'forbids or restrains an act,' and 'mandatory injunction' as an injunction that 'orders an affirmative

act or mandates a specified course of conduct'"); *Legend Night Club v. Miller*, 637 F.3d 291, 296 (4th Cir. 2011) (characterizing an injunction against enforcement of a speech restriction as "a prohibitory injunction"); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89-90 (2d Cir. 2006) (concluding that an injunction against enforcement of a speech restriction was "prohibitory" rather than "mandatory," because it "clearly prohibits, rather than compels, government action by enjoining the future enforcement of [the ordinance] against plaintiffs").

What Tracy Rifle seeks is the sort of remedy that this Court has routinely granted in First Amendment cases, without any suggestion that the remedy is "particularly disfavored." For instance, this Court in *Valle Del Sol* concluded that a preliminary injunction protecting commercial speakers was "in the public interest" because the enjoined statute, "if enforced, would infringe the First Amendment rights of many persons who are not parties to this lawsuit." 709 F.3d at 829.

"Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974 (reversing denial of preliminary injunction); *Associated Press v. Otter*, 682 F.3d 821, 826

(9th Cir. 2012) (likewise) (quoting *Sammartano*). "[O]ur caselaw clearly favors granting preliminary injunctions to a plaintiff like Klein"—a plaintiff suing to vindicate not only his rights but "also of anyone seeking to express their views in this manner"—"who is likely to succeed on the merits of his First Amendment claim." *Klein*, 584 F.3d at 1208.

The State argues that the preliminary injunction should be denied in this case because an injunction would pose a "risk to public safety." State Br. 15. But for the reasons given in Part III above and in the opening brief, Tracy Rifle Br. 38, there is no evidence that an injunction would have such an effect.

At most, there is the State's speculation and conjecture. Seeing a handgun advertisement outside a store, the theory goes, will supposedly lead some people to make an "uni[n]formed decision" to buy a handgun. State Br. 23. The people would presumably not have made such a decision in response to handgun advertisements that are still allowed elsewhere, or in response to a general "Guns" advertisement displayed by a store that carries handguns. *Id.* at 21. And the allegedly "uninformed" nature of the decision will in turn make the buyers likelier to commit a

crime or commit suicide at some time in the future (after the 10-day waiting period). *Id.* at 22.

Such speculation and conjecture about the supposed harms stemming from the persuasive effect of constitutionally protected speech cannot suffice to make a speech restriction substantively constitutional. *See supra* Part I.B. Mere speculation likewise cannot suffice to overcome plaintiffs' likelihood of success on the merits, and the irreparable harm caused by violation of their First Amendment rights. "[A]bsent a showing in the record of actual (or realistic threat of)" harm, there is only "minimal" "hardship imposed upon [the government] by the barring of enforcement" of rules that likely violate the First Amendment. *Sammartano*, 303 F.3d at 973 (reversing denial of preliminary injunction against a "court policy banning individuals who are wearing [motorcycle organization] clothing from two floors of [a] government building" when the policy likely violated the First Amendment, *id.* at 962, 972-73, even though the government claimed that the policy was necessary to prevent interference with "orderly administration of justice," *id.* at 973).

And speculation cannot suffice to overcome plaintiffs' likelihood of success on the merits, and the irreparable harm to First Amendment

rights if the preliminary injunction is not granted, even though the State speculates that enjoining the statute will undermine public safety. The government in *Valle Del Sol* likewise argued that a commercial speech restriction was necessary to protect public safety and prevent physical injury. 709 F.3d at 814, 828-29. Yet this Court nonetheless held that the statute in *Valle Del Sol* should be preliminary enjoined, because (1) the plaintiffs were likely to succeed in showing that the statute violated the First Amendment; (2) "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *id.* at 828 (internal quotation marks omitted); (3) the equities therefore tipped in the plaintiffs' favor; and (4) "an injunction is in the public interest because the day labor provisions, if enforced, would infringe the First Amendment rights of many persons who are not parties to this lawsuit," *id.* at 829. Precisely the same logic applies here.

## Conclusion

The District Court correctly concluded that § 26820 is likely unconstitutional. Tracy Rifle's opening brief and this brief have argued that it is indeed unconstitutional. The State has no legitimate interest in con-

tinuing to enforce this unconstitutional law, Tracy Rifle Br. 42-43, and

should therefore be enjoined from enforcing it.


                                          Respectfully Submitted,


                                          s/ <u>Eugene Volokh</u>
                                          Attorney for Plaintiff-Appellants
                                          Tracy Rifle & Pistol LLC et al.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,322 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2010 in 14-point New Century Schoolbook.

Dated: October 5, 2015

s/ Eugene Volokh
Attorney for Plaintiff-Appellants
Tracy Rifle & Pistol LLC et al.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 5, 2015.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: October 5, 2015

s/ Eugene Volokh
Attorney for Plaintiff-Appellants
Tracy Rifle & Pistol LLC et al.